

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-15-2000

# Nyhuis v. Reno

Precedential or Non-Precedential:

Docket 98-3543

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"Nyhuis v. Reno" (2000). *2000 Decisions.* Paper 29.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/29

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed February 15, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 98-3543

DOUGLAS NYHUIS, Appellant

v.

JANET RENO, Attorney General;
ERIC HOLDER, Deputy Attorney General;
KATHLEEN HAWK, DIRECTOR-BOP;
JOHN HAHN, WARDEN

On Appeal From the United States District Court
For the Western District of Pennsylvania
(D.C. Civ. No. 97-cv-00324E)
District Judge: Honorable Sean J. McLaughlin

Argued: January 11, 2000

Before: BECKER, Chief Judge, ALITO and BARRY,
Circuit Judges.

(Filed: February 15, 2000)

> JOSEPH M. RAMIREZ, ESQUIRE
>  (ARGUED)
> Eckert, Seamans, Cherin & Mellott,
>  LLC
> 600 Grant Street, 44th Floor
> Pittsburgh, PA 15219
>
>  Counsel for Appellant


> DAVID W. OGDEN, ESQUIRE
> Acting Assistant Attorney General
> BARBARA L. HERWIG, ESQUIRE
> PETER R. MAIER, ESQUIRE
>  (ARGUED)
> United States Department of Justice
> Civil Division, Appellate Staff
> 601 D Street, NW
> Room 9012
> Washington, DC 20530-0001
>
> BONNIE R. SCHLUETER, ESQUIRE
> TINA M. OBERDORF, ESQUIRE
> Office of the United States Attorney

        633 United States Post Office &
         Courthouse
        Pittsburgh, PA 15219

        Counsel for Appellees

OPINION OF THE COURT

BECKER, Chief Judge.

Given the large number of prisoner lawsuits filed in the
federal courts each year, the case at bar raises an
important question of statutory interpretation regarding the
mandatory exhaustion requirement governing prisoner
lawsuits. As amended by the Prison Litigation Reform Act of
1996 (the PLRA), 42 U.S.C. S 1997e(a) provides that "[n]o
action shall be brought with respect to prison conditions
under section 1983 of this title, or any other Federal law,
by a prisoner confined in any jail, prison, or other
correctional facility until such administrative remedies as
are available are exhausted." 42 U.S.C. S 1997e(a) (amended
by Pub. L. 104-134, Title I, S101(a), 110 Stat. 1321-71
(1996)) (emphasis added).

Douglas Nyhuis, an inmate at the Federal Correctional
Institution McKean (FCI McKean), brought this Bivens
action--alleging several violations of his property rights,
and seeking monetary, declaratory, and injunctive relief--
without first exhausting the administrative process

                              2


available to him at FCI McKean. He argues that he did not
avail himself of the administrative process because it could
not provide him with two of the three forms of relief that he
seeks in the present action--specifically, the monetary and
declaratory relief. Accordingly, he argues, because pursuit
of his administrative remedies would have been for the
most part futile, S 1997e(a)'s exhaustion requirement
should not bar his action.

Several of our sister circuits have accepted this argument
in cases in which exhaustion of administrative remedies is
truly futile; i.e. the administrative process cannot provide
the inmate-plaintiff with any form of the relief he seeks.
The Defendants in this case have suggested in their briefing
and at oral argument that such a futility exception may be
appropriate under certain circumstances. Other courts,
including two courts of appeals, have rejected the notion
that there is ever a futility exception to S 1997e(a)'s
mandatory exhaustion requirement.

Subscribing to the minority position among courts of

appeals, and rejecting arguments advanced by Nyhuis and the Defendants, we hold that the PLRA amended S 1997e(a) in such a way as to make exhaustion of all administrative remedies mandatory--whether or not they provide the inmate-plaintiff with the relief he says he desires in his federal action. This conclusion is supported by the plain language of S 1997e(a), by analogous Supreme Court precedent, and by the policy considerations animating the principle of administrative exhaustion. Therefore, because Nyhuis failed to exhaust the administrative remedies available to him, we hold that his action is barred by S 1997e(a) and was appropriately dismissed by the District Court. Accordingly, we affirm the District Court's order.[1]

I.

Nyhuis alleges that prison officials at FCI McKean confiscated several items of his personal property, including

_____

1. We express our appreciation to Joseph M. Ramirez, Esquire, who, acting pro bono at the request of the court, represented Mr. Nyhuis both ably and zealously.

3

a tan bath robe that he purchased in a prison store; several pairs of shoes; two electric fans; an assortment of clothes, towels, and blankets; a calculator; and a Timex watch. These items were confiscated pursuant to the Bureau of Prisons' Inmate Personal Property Program Statement (P.S.) 5580.05 and Institutional Supplement 5580.05, which limited the types and amounts of items prisoners could have in their personal possession pursuant to P.S. 5580.03. Although Nyhuis objected to the confiscation of his property, he concedes that he did not pursue the administrative processes in place at FCI McKean in order to remedy these deprivations. See infra note 12 (describing the administrative process).

Instead, Nyhuis filed this pro se action, pursuant to Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971), in the District Court for the Western District of Pennsylvania. In his complaint, he alleged that the Defendants--Janet Reno, Attorney General of the United States; Eric Holder, Deputy Attorney General of the United States; Kathleen M. Hawk, Director of the Federal Bureau of Prisons; and John E. Hahn, Warden at FCI McKean-- through their control and regulation of federal prisons and in their implementation of federal law regarding prisoners' living conditions, had violated his constitutional rights by depriving him of property without due process of law, without just compensation, and in violation of substantive

due process. He contended, inter alia, that the FCI officials at FCI McKean arbitrarily and unreasonably deprived him of his personal property, some of which he had purchased from the prison store, without giving him a hearing or affording him a sufficient post-deprivation remedy. Nyhuis also advanced a Fourth Amendment claim, but he has abandoned this contention on appeal. In terms of relief, he asked for (1) compensatory and punitive damages; (2) an injunction ordering both that his property be returned, and that P.S. 5580.03 be grandfathered for inmates such as himself; and (3) a declaratory judgment, ruling, inter alia, that the portion of the Congressional statute that gave rise to P.S. 5580.05 is unconstitutional.

Defendants moved under FED. R. CIV . PRO. 12(b)(6) to dismiss Nyhuis's complaint. They advanced several

4

arguments, including the contention that, because he had failed to exhaust his available administrative remedies before filing his action in federal court, his action was barred procedurally by 42 U.S.C. S 1997e(a). Nyhuis contended that since the Bureau of Prisons' administrative process could not afford the monetary or declaratory relief he requested, exhaustion would essentially be futile, and thus, S 1997e(a) should not bar his action. In her Report and Recommendation, the Magistrate Judge to whom the case had been referred accepted the Defendants' procedural bar argument and rejected Nyhuis's futility argument.

Rather than merely dismiss the case at that point, so that Nyhuis might go back and exhaust his administrative remedies, she reached the merits of Nyhuis's action so as to dispose of the issues should Nyhuis refile his action after exhausting the administrative process. See Nyhuis v. Reno, No. 97-324, at 5 (W.D. Pa. July 24, 1998) ("[A]s this court only has the power to dismiss this complaint without prejudice, only to have it filed again when[Nyhuis] has exhausted his administrative remedies, the substantive allegations raised in the complaint are reviewed below.") (bold in original). Framing the merits question as one of standing, see id. at 7-8, and not allowing for discovery or the development of a factual record before ruling on Nyhuis's claims, the Magistrate Judge opined that Nyhuis had failed to demonstrate that he had a cognizable property interest in his personal property, see id. at 9.

Nyhuis filed a timely objection to the Magistrate Judge's report and recommendation. The District Court adopted the Magistrate Judge's report and recommendation as its opinion and ordered that the Defendant's motion to dismiss be granted. Nyhuis timely appealed. The District Court had

jurisdiction pursuant to 28 U.S.C. S 1331. We have
jurisdiction under 28 U.S.C. S 1291.2

_____

2. To be appealable under 28 U.S.C. S 1291, an order of dismissal must
ordinarily be with prejudice. See, e.g., Bahtla v. U.S. Capital Corp., 990
F.2d 780, 786 (3d Cir. 1993). Though the District Court may have
dismissed Nyhuis's action without prejudice, in this situation, that
description is anomalous for two reasons. First, the"without prejudice"
description is in tension with the Magistrate Judge's reaching the merits.

5

II.

Our analysis focuses on whether S 1997e(a), as amended
by the PLRA, contemplates a futility exception in cases in
which the applicable administrative process cannot afford
the inmate-plaintiff with the relief he seeks in his federal
action, and whether such an exception applies in this case.
Section 1997e(a) provides that

> [n]o action shall be brought with respect to prison
> conditions under section 1983 of this title, or any other
> Federal law, by a prisoner confined in any jail, prison,
> or other correctional facility until such administrative
> remedies as are available are exhausted.

42 U.S.C. S 1997e(a). As the statutory language makes
clear, S 1997e(a) applies equally to S 1983 actions and to
Bivens actions. See, e.g., Lavista v. Beeler, 195 F.3d 254,
256 (6th Cir. 1999). Bivens actions are by definition
"brought . . . under . . . Federal law," 42 U.S.C. S 1997e(a),
and Congress clearly intended to sweep Bivens actions into
the auspices of the S1997e(a) when it enacted the PLRA, see
Lavista, 195 F.3d at 256 (collecting legislative history); see
also Alexander v. Hawk, 159 F.3d 1321, 1324-25 (11th Cir.
1998) (same); Garrett v. Hawk, 127 F.3d 1263, 1265 (10th
Cir. 1997) (same).

_____

Had Nyhuis exhausted his remedies and refiled his action, the
Magistrate Judge (and the District Court by adopting her report and
recommendation) would have no doubt dismissed Nyhuis's action on the
merits; her report says as much. Therefore, in a sense, Nyhuis had no
reason to cure the defect in his complaint. Second, Nyhuis did not
attempt to cure his complaint by availing himself of the administrative
process; instead, he filed this appeal, raising the argument that
exhausting his administrative remedies would be futile. In doing so, he
effectively stands on his original complaint. Under either of these
circumstances, appellate review from a dismissal without prejudice is
appropriate. See Garber v. Lego, 11 F.3d 1197, 1198 n.1 (3d Cir. 1993)
(noting that plaintiff can appeal from a dismissal without prejudice when

plaintiff cannot cure the defect in his complaint or when plaintiff declares his intention to stand on the complaint); see also Bethel v. McAllister Bros., Inc., 81 F.3d 376, 381 (3d Cir. 1996); Trevino-Barton v. Pittsburgh Nat'l Bank, 919 F.2d 874, 878 (3d Cir. 1990).

Several courts of appeals have addressed the exhaustion and futility question with which we are faced. Two general lines of authority have emerged from these cases. In cases in which a prison's internal grievance procedure cannot provide money damages and the plaintiff asks only for money damages arising only out of isolated past harms, a number of courts have recognized and applied a futility exception to 1997e(a)'s exhaustion requirement.3 These courts, and the district courts that agree with them, reason that it is senseless to force a prisoner to engage in the "empty formality" of petitioning the prison administrative process for a form of relief that it cannot provide. White v.

_____

3. See Whitley v. Hunt, 158 F.3d 882, 887 (5th Cir. 1998) (not requiring exhaustion before filing Bivens action requesting monetary damages when exhaustion would be futile because no monetary administrative remedies were available); Lunsford v. Jumao-As, 155 F.3d 1178, 1179 (9th Cir. 1998) (same); Garrett v. Hawk, 127 F.3d 1263, 1266-67 (10th Cir. 1997) (same; noting that if Congress created an administrative process that could provide monetary relief, the futility exception would not apply); see also Rumbles v. Hill, 182 F.3d 1064, 1068-69 (9th Cir. 1999) (applying Lunsford's futility exception to a S 1983 action). The Seventh Circuit can likely be included in this list as well. Judge Easterbrook's opinion in Perez v. Wisconsin Dep't of Corrections, 182 F.3d 532, 538 (7th Cir. 1999), a S 1983 action, held that "pursuit of administrative remedies is necessary no matter what relief the plaintiff seeks." He noted, however,

> It is possible to imagine cases in which the harm is done and no further administrative action could supply any  "remedy." Perhaps Lunsford [cited supra] met that description. Suppose the prisoner breaks his leg and claims delay in setting the bone is cruel and unusual punishment. If the injury has healed by the time suit begins, nothing other than damages could be a "remedy," and if the administrative process cannot provide compensation then there is no administrative remedy to exhaust. Perez, unlike Lunsford,

alleges

> that his medical problems are ongoing and that his treatment remains deficient, so Wisconsin can provide him with some "remedy" whether or not its administrative process offers damages.

Id. (emphasis in original). A subsequent panel for the Seventh Circuit Court of Appeals cast doubt on the extent of this exception, calling it dicta and not applying it in the case at bar, but did not rule that such

an exception would not apply in the precise factual context about which Judge Easterbrook hypothesized. See Massey v. Helman, 196 F.3d 727, 734 (7th Cir. 1999).

Fauver, 19 F. Supp. 2d 305, 317 (D.N.J. 1998) (Orlofsky, J.) ("Any other interpretation would compel the conclusion that `Congress intended to erect meaningless barriers to suit.' ") (citation omitted).

These courts, as do others, see infra note 4, also conclude that S 1997e(a) is not a jurisdictional requirement, which by definition cannot be subject to a futility exception. Rather, they hold that S 1997e(a) is a codification within the PLRA of the doctrine of exhaustion of administrative remedies, which before the PLRA was enacted had a futility exception grafted upon it. See, e.g., Rumbles, 182 F.3d 1067-68. Therefore, they conclude, it is appropriate to apply the futility exception when it is warranted, much in the same way a court would equitably toll a statute of limitations.4

Two courts of appeals and several district courts have refused to apply a futility exception to S 1997e(a) in light of the way the PLRA amended the section. See, e.g., Wyatt v. Leonard, 193 F.3d 876, 878 (6th Cir. 1999); Alexander v. Hawk, 159 F.3d 1321, 1328 (11th Cir. 1998); Beeson v. Fishkill Correctional Facility, 28 F. Supp. 2d 884, 896 (S.D.N.Y. 1998). The amendment replaced the requirement that plaintiff-inmates exhaust "plain, speedy, and effective remedies as are available" with the requirement that

_____

4. Although we disagree that the futility exception survives the enactment of the PLRA, see infra Section II.C, we agree with the clear majority of courts that S 1997e(a) is not a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction. See, e.g., Massey v. Hellman, 196 F.3d 727, 732 (7th Cir. 1999); Wyatt v. Leonard, 193 F.3d 876, 879 (6th Cir. 1999); Underwood v. Wilson, 151 F.3d 292, 294-95 (5th Cir. 1998); Basham v. Uphoff, 1998 WL 847689, No. 98-8013, at *3 (10th Cir. Dec. 8, 1998). Section 1997e(c)(2), also enacted as part of the PLRA, provides that "[i]n the event that a claim is, on its face, frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief, the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies." 42 U.S.C.A. S 1997e(c)(2) (West Supp. 1999) (emphasis added). If exhaustion under the PLRA were jurisdictional, this section and the power it gives district courts would make no sense. See Underwood, 151 F.3d at 295.

inmate-plaintiffs exhaust "such administrative remedies as are available."5 These courts reason that the elimination of the words "plain, speedy, and effective" from S 1997e(a) precludes application of a futility exception, and that the word "available" refers to any remedy the prison supplies, rather than one of the prisoner's choosing. See, e.g., Alexander, 159 F.3d at 1326; Beeson, 28 F. Supp. 2d at 893.

Nyhuis's Bivens action is distinguishable from both lines of cases because he requests a mix of remedies, some of which were and some which were not available under the Bureau of Prisons' administrative process. Nyhuis has requested money damages and declaratory relief, which are not available from the Bureau of Prisons, see 28 C.F.R. S 542.12(b) (1999); see also BOP Program Statement 1330.13, P 6(b)(1)-(3) (1996) (refusing to consider claims for monetary relief), and a request for injunctive relief, which is available from the Bureau, see 28 C.F.R. S 542.10 (1999). Therefore, unlike the cases recognizing the futility exception, in which the inmate asked the district court only for remedies unavailable to him in the administrative process, Nyhuis's action is a mixed claim, in which he asks the District Court both for available and unavailable remedies.

_____

5. To set forth the full text, before it was amended by the PLRA, S 1997e(a) provided that

    (1) Subject to the provisions of paragraph (2), in any action
    brought pursuant to section 1983 of this title by an adult
convicted

    of a crime confined in any jail, prison, or other correctional
facility,
    the court shall, if the court believes that such a requirement
would

    be appropriate and in the interests of justice, continue such case
    . . . to require exhaustion of such plain, speedy, and effective
    remedies as are available.

    (2) The exhaustion of administrative remedies under paragraph (1)
    may not be required unless the Attorney General has certified or
the

    court has determined that such administrative remedies are in
    substantial compliance with the minimum acceptable standards
    promulgated under subsection (b) of this section or are otherwise
    fair and effective.

42 U.S.C. S 1997e(a) (1994) (amended 1996) (emphasis added).

B.

No court of appeals interpreting the PLRA has recognized
a futility exception to S 1997e(a)'s exhaustion requirement
in a mixed claim case. Alexander and Beeson would of
course require exhaustion in the mixed claim scenario;
both cases require exhaustion in every case, whether it is
futile or not. See Alexander, 159 F.3d at 1325 (also noting
that in cases decided prior to the enactment of the PLRA,
courts required exhaustion when plaintiff's claims were
mixed); Beeson, 28 F. Supp. 2d at 896. Those courts of
appeals that have recognized the futility exception, see
supra note 3, have not extended the exception to mixed
claims actions: Two courts have explicitly rejected the
futility exception's application in mixed claim cases,6 while
the other courts have impliedly rejected its application in
similar circumstances.7

_____

6. In Whitley, 158 F.3d at 887, the Court of Appeals for the Fifth Circuit
applied the futility exception in a case in which the plaintiff asked for
money damages that were not available under administrative scheme.
The court noted, however, that it would have required exhaustion had
the plaintiff in the case not amended his pleading to drop his claim for
injunctive relief, which he could have obtained in the available
administrative process. See id. In Lavista v. Beller, the Court of Appeals
for the Sixth Circuit wrote:

        Although it may make sense to excuse exhaustion of the
        prisoner's complaint where the prison system has aflat rule
        declining jurisdiction over [claims involving only money damages],
it
        does not make sense to excuse the failure to exhaust when the
        prison system will hear the case and attempt to correct legitimate
        complaints, even though it will not pay damages. Here, because
        plaintiff seeks injunctive and declaratory relief, as well as
monetary
        damages, he may be successful in having the Bureau of Prisons at
        least review its policies and procedures concerning disabled
persons

        at their facilities. If so, presenting his claims to the Bureau of
        Prisons first would not be futile, even if he cannot receive
monetary
        damages.

195 F.3d 254, 257 (6th Cir. 1999) (citation and footnote omitted).

7. See Rumbles, 182 F.3d at 1069 ("Exhaustion of administrative remedies under S 1997e(a) is not required if a prisoner's section 1983 claim seeks only money damages and if the correctional facility's administrative grievance process does not allow for such an award.")

10

Such a rule makes particular sense in a case such as the one at bar. Nyhuis admits that if we were to award him the declaratory relief he seeks, his claims for injunctive relief would be "essentially superfluous." Reply Brief at 3. The converse, of course, is also true. If, in the available administrative process, the Bureau of Prisons were to give him the injunctive relief he requests, several of his claims for declaratory relief would be rendered moot. Allowing the federal courts to fashion prison remedies before the prisons themselves have had the opportunity (and have the ability) to do so, is surely not what Congress intended when it enacted the PLRA. Cf. Perez, 182 F.3d at 536-37 ("No one can know [ex ante] whether administrative requests will be futile; the only way to find out is to try.""[Otherwise] the

_____

(emphasis added); Lunsford, 155 F.3d at 1179 ("Lunsford . . . seeks only damages . . . . He does not request that the Bureau of Prisons be required to take further corrective action. . . .[He is] therefore not required to exhaust his administrative remedies before filing this lawsuit . . . in light of the fact that the Administrative Remedy Program only provides for injunctive relief.") (emphasis added); Garrett v. Hawk, 127 F.3d at 1266 (focusing on fact that inmate sought"purely monetary damages," which were not available under the current administrative process, and not injunctive relief as well).

In cases arising before or outside of the PLRA context, this court has treated mixed claim actions similarly. See, e.g., Muhammad v. Carlson, 739 F.2d 122, 125 (3d Cir. 1984) ("Because a prisoner asserting only a claim for damages under Bivens apparently can obtain no relief from the Bureau of Prisons, it would serve little purpose to require him to exhaust administrative remedies before coming into the courts.") (emphasis added). In this line of cases, the futility exception did not apply in cases in which the petitioner asked both for money damages, which were not available in the administrative process, and for injunctive relief, which was available. See Young v. Quinlan, 960 F.2d 351, 356 n.8 (3d Cir. 1992) (Bivens action) (citing Veteto v. Miller, 794 F.2d 98, 100 (3d Cir. 1986) (holding "that the requirement for exhaustion of the administrative remedy provided by the [administrative process] applies to a prisoner's suit for injunctive or mandatory relief whether or not it carries an added claim for damages")). As explained below, we believe that the PLRA did away with the futility exception altogether. See infra Section I.C. Therefore, the PLRA rendered, for the most part, irrelevant the distinction that Muhammad and Young drew between mixed claim actions and those only involving requests for money damages.

simplicity of S 1997e(a) would be lost . . . .") (emphasis in original).

Accordingly, under either the across-the-board exhaustion approach or the mixed-claim approach adopted by courts of appeals recognizing a futility exception to S 1997e(a), Nyhuis's action, as pleaded, is barred because of his failure to exhaust his available administrative remedies. That said, we are of the opinion that S 1997e(a), as amended by the PLRA, completely precludes a futility exception to its mandatory exhaustion requirement. Therefore, we will affirm the District Court's judgment not on the ground that the futility exception was not applicable in this case, but on the ground that it is not applicable in any case.

C.

There are four principal reasons why we are convinced that the most sensible reading of S 1997e(a) is that the futility exception is not applicable in any case.

1.

The first reason is the plain-reading argument, mentioned above, regarding the manner in which Congress amended the language in S 1997e(a). As Judge Mukasey noted in Beeson, 28 F. Supp. 2d at 893, the PLRA amended "S 1997e(a) by, inter alia, deleting the phrase `plain, speedy, and effective' and removing all references to Attorney General certification or court approval of available administrative remedies." See supra note 5 (reproducing S 1997e(a) as it read before its amendment by the PLRA). In interpreting the alteration in language, we must presume, as always, that this amendment was intended to have "real and substantial effect." Stone v. I.N.S., 514 U.S. 386, 397 (1995).

In Alexander, the Eleventh Circuit persuasively described the effect of this amendment. The court wrote, "The removal of the qualifiers `plain, speedy, and effective' from the PLRA's mandatory exhaustion requirement indicates that Congress no longer wanted courts to examine the

effectiveness of administrative remedies but rather to focus solely on whether an administrative remedy program is `available' in the prison involved." Alexander, 159 F.3d at

1326; accord Perez, 182 F.3d at 537. Concomitantly, Judge Mukasey wrote in Beeson, 28 F. Supp. 2d at 893 (citations and quotations omitted), the amendment "suggests strongly that `Congress now conditions prisoner suits on the exhaustion of such administrative remedies as are available, without regard to whether those remedies are `effective,' without regard to whether they substantially comply with `minimum acceptable standards,' and without regard to whether they are `just and effective,' " as S 1997e(a) had required before it was amended by the PLRA, see supra note 5 (reproducing S 1997e(a) prior to its amendment by the PLRA).

The Court of Appeals for the Fifth Circuit, as have other courts, attempts to refute this argument, suggesting that the retention of the word "available" in S 1997e(a) implies that the judicially created futility exception survives the passage of the PLRA, which merely codified existing exhaustion doctrine. See Whitley, 158 F.3d at 886–87. Invoking Webster's definition of the word "available" as it applies to a remedy--"a remedy is `available' when it can be availed `for the accomplishment of a purpose' or `is accessible or may be obtained' "--the court held that if prisoner sought a remedy that he could not obtain in accessible administrative procedures, pursuant to S 1997e(a), he need not avail himself of those futile procedures before bringing an action in federal court. Id. at 887 (quoting WEBSTER'S NEW INT'L DICTIONARY 150 (3d ed. 1981)).

Several courts have exposed the three weaknesses of this argument. First, as Judge Mukasey writes, "[R]eading S 1997e(a) to apply only where an administrative scheme provides adequate relief would "essentially reintroduce[ ] the requirement of an `effective administrative remedy' after Congress deleted it." Beeson, 28 F. Supp. 2d at 893 (citation omitted) (alteration in original). Nyhuis and other prisoners in similar cases, indeed, do not complain that the prisons in which they are confined do not provide internal remedies that can be availed "for the accomplishment of a

13

purpose"--as Webster's defines "available"--they merely dispute that the internal remedies which are available do not allow them to accomplish all of their own purposes. This is true even in the non-mixed-claim scenario where the prisoner asks for unavailable monetary relief, and the prison can possibly ameliorate some of the prisoner's concerns with internal remedies. See infra Section II.C.4 (describing several of these alternative remedies). By eliminating the "effective" language in S 1997e(a), Congress saved federal courts from inquiring into whether the

particular administrative remedies available comported with inmate-plaintiff's individualized and immediate desires for relief.

Second, by leaving the word "available" inS 1997e(a) Congress merely meant to convey that if a prison provided no internal remedies, exhaustion would not be required. The fact that the word survived the changes that the PLRA wrought does not necessarily mean that the futility exception survives. See Alexander, 159 F.3d at 1326-27 ("Some state penal institutions may not have an administrative remedy program to address prison conditions, and thus there are no `available' administrative remedies to exhaust. Section 1997e(a) permits these prisoners to pursue their claims directly in federal court."); accord Perez, 182 F.3d at 537; see also Moore v. Smith, 18 F. Supp. 2d 1360, 1364 (N.D. Ga. 1998) (Murphy, J.) ("The most natural reading of [S 1997e(a), as it was amended by the PLRA,] leads to the conclusion that Congress was not asking courts to evaluate the sufficiency of the administrative remedies, but merely intended to require prisoners to utilize the existing administrative remedies, whether the grievance procedure will produce the precise remedy that the prisoner seeks or some other remedy.").

Third, by amending S 1997e(a) in the way that it did, Congress not only eliminated the futility exception, it foreclosed the opportunity for courts to read the exception back into the statute. The courts that have attempted to resurrect the futility exception and justify their inquiry into the efficacy of the available prison administrative process ignore Supreme Court precedent cautioning against such a move. As Judge Mukasey noted in Beeson, the Supreme

14

Court has drawn a "sharp distinction between statutory and judicial exhaustion: `Where Congress specifically mandates, exhaustion is required. But where Congress has not clearly required exhaustion, sound judicial discretion governs.' " 28 F. Supp. 2d at 894 (quoting McCarthy v. Madigan, 503 U.S. 140, 144 (1992)). Before S 1997e(a) was amended, it did not require exhaustion, but rather, vested power in the federal courts to make such determinations. See supra note 5. Therefore, the "sound discretion" of courts governed, McCarthy, 503 U.S. at 144, and courts were free to recognize a futility exception.

Section 1997e(a), as amended, however, eliminates such discretion. It "specifically mandates" that inmate-plaintiffs exhaust their available administrative remedies, id., by providing that "[n]o action shall be brought" until the inmate-plaintiff has done so, 42 U.S.C. S 1997e(a).

Accordingly, as Congress has now "clearly required" exhaustion in S 1997e(a), McCarthy, 503 U.S. at 144, "it is beyond the power of this court--or any other--to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." Beeson, 28 F. Supp. 2d at 894-95 (citing Weinberger v. Salfi, 422 U.S. 749, 766 (1975) (holding that where exhaustion is statutorily mandated, "[t]he requirement . . . may not be dispensed with merely by a judicial conclusion of futility"); Patsy v. Florida Bd. of Regents, 457 U.S. 496, 512 (1982) (stating that courts do not have authority "to alter the balance struck by Congress in establishing the procedural framework for bringing actions underS 1983")).

2.

The second argument in favor of our reading of S 1997e(a) has a great deal to do with the nature of prison litigation and Congress's intent in enacting the PLRA. As the court stated in Alexander, "Congress amended section 1997e(a) largely in response to concerns about the heavy volume of frivolous prison litigation in the federal courts." 159 F.3d at 1326 n.11 (citing 141 Cong. Rec. H14078-02, H14105 (daily ed. Dec. 6, 1995)). The court went on to note, "Congress desired `to wrest control of our prisons from the lawyers and the inmates and return that control to

15

competent administrators appointed to look out for society's interests as well as the legitimate needs of prisoners.' " Id. (quoting 141 Cong. Rec. S14408-01, S14418 (daily ed. Sept. 27, 1995)). Inmate-plaintiffs often file claims which are untidy, repetitious, and redolent of legal language. The very nature of such complaints necessitates that courts expend significant and scarce judicial resources to review and refine the nature of the legal claims presented."With these considerations in mind, Congress mandated that prisoners exhaust administrative remedies and eliminated courts' conducting case-by-case inquiries until after a prisoner has presented his claims to a particular administrative remedy program, which often helps focus and clarify the issues for the court." Alexander, 159 F.3d at 1326 n.11.

Exempting claims for monetary relief from the exhaustion requirement in S 1997e(a) would frustrate this purpose. It would enable prisoners, as they became aware of such an exemption, to evade the exhaustion requirement, merely by limiting their complaints to requests for money damages. See Wyatt, 193 F.3d at 878. The PLRA "is designed to deter frivolous lawsuits and this purpose would be undermined if prisoners could avoid the law simply by asking for monetary damages." Id. Such a result, would "do little to

`stem the tide of meritless prisoner cases,' as Congress intended." Beeson, 28 F. Supp. 2d at 893 (citing 141 Cong. Rec. S7525 (May 25, 1995)).

3.

The third argument militating in favor of our position arises from the justifiable assumption, that in amending S 1997e(a), Congress intended to save courts from spending countless hours, educating themselves in every case, as to the vagaries of prison administrative processes, state or federal. An interpretation of S 1997e(a) that conditioned exhaustion on whether an administrative scheme grants the relief requested would have the effect of making the application of S 1997e(a) dependent upon the peculiarities of such processes. Such an interpretation would involve federal courts in the tedious and intrusive process of evaluating each prisoner's cause of action and the underlying administrative scheme in each prison--

16

something Congress was plainly guarding against when it enacted the PLRA. See Wyatt, 193 F.3d at 878-79; see also 141 Cong. Rec. S7498-01, S7526-27 (May 25, 1995) (statement of Sen. Kyl) ("Statistics compiled by the Administrative Office of the U.S. Courts . . . show that inmate suits are clogging the courts and draining precious judicial resources . . . . The volume of prisoner litigation represents a large burden on the judicial system, which is already overburdened by increases in nonprisoner litigation . . . . An exhaustion requirement is appropriate for prisoners given the burden that their cases place on the Federal court system . . . .").

The statements made at oral argument by the lawyer from the Appellate Staff of the Civil Division of the Department of Justice in Washington (representing all of the Defendants) strengthen our belief that we reach the correct result. Counsel advised us that each of the institutions in the Bureau of Prisons can and sometimes does treat claims for money damages differently. 8 According to counsel, in many cases the local Bureau of Prisons institution will reject out of hand a prisoner grievance that includes a claim for money damages so that the grievance would get effectively no review. (This treatment is consonant with the Bureau's stated policy. See 28 C.F.R. S 542.12(b) (1999); see also BOP Program Statement 1330.13, P 6(b)(1)-(3) (1996).) In such a case, counsel suggested, resort to administrative processes would be futile.

But not always. Counsel also stated that the Bureau of

Prisons reserved its right to argue that, had the inmate triggered the administrative process and presented a meritorious claim, the local institution would have reviewed the inmate's claim and fashioned some form of relief other than money damages. (We presume that the institutions

---

8. There are ninety four such institutions, see Federal Bureau of Prisons, Federal Bureau of Prisons Quick Facts P 1 (Jan. 18, 1999; last updated Nov. 30, 1999) http://www.bop.gov/fact0598.html>, housing some 136,163 inmates, Federal Bureau of Prisons, Weekly Population Report, at *3 (Jan. 18, 1999; last updated Jan. 7, 1999) http://www.bop.gov/weekly.html >.

sometimes do that.) In other words, the inmate seeking only money damages, thinking he has no administrative remedy, can proceed to federal court and wait and see whether a motion to dismiss is filed, and if it is, he would then know that he should have pursued his administrative remedies. Of course, by this time, the time limit to file such a grievance may have well passed. See infra note 12 (discussing this possibility).

The Defendants' suggested approach to these cases would require prisoners to act as seers, and judges to act as detectives as they attempted to discover whether the local administrative process could have, would have, or might have afforded the inmate relief. The bright-line rule that we adopt makes things clear for inmates and insures that our time is saved for more important matters, as Congress intended. See Perez, 182 F.3d at 536-37. Our bright-line rule is that inmate-plaintiffs must exhaust all available administrative remedies.9 Under such an approach, federal courts need not waste their time evaluating whether those remedies provide the federal prisoner with the relief he desires. As detailed in the margin, this argument has equal, if not greater import, in 42 U.S.C. S 1983 actions brought by state prisoners against state prison officials.10

---

9. Obviously, for the administrative process to constitute a bar, it must be capable of addressing the events that could generate a lawsuit or have some relevance to that lawsuit. If, for example, the only grievance procedure available dealt exclusively with work assignments, it would not have to be exhausted unless the subsequent lawsuit was related thereto. But see discussion in Section II.C.4, infra.

10. In Mississippi Choctaw Indian Band v. Holyfield, the Supreme Court made it clear that " `in the absence of a plain indication to the contrary,' "

Congress should not be understood to " `mak[e] the application of [a] federal act dependent on state law.' " 490 U.S. 30, 43 (1989) (emphasis added) (citations omitted). Congress gave no indication––let alone a "plain indication"––that application of S 1997e(a) should depend on the vagaries of state law. In fact, as Judge Mukasey noted in Beeson,

> [T]he deletion of the language making exhaustion dependent on the effectiveness of state remedies, and the removal of the provisions governing assessment of states' remedial schemes by the Attorney General and courts, is a fairly "plain indication" that Congress

18

4.

The last argument supporting our holding relies upon the policies underlying exhaustion requirements in general. Courts have recognized myriad policy considerations in favor of exhaustion requirements. They include (1) avoiding premature interruption of the administrative process and giving the agency a chance to discover and correct its own errors; (2) conserving scarce judicial resources, since the complaining party may be successful in vindicating his rights in the administrative process and the courts may never have to intervene; and (3) improving the efficacy of the administrative process. Each of these policies, which Congress seems to have had in mind in enacting the PLRA, is advanced by the across-the-board, mandatory exhaustion requirement in S 1997e(a).

As the courts in Wyatt, 193 F.3d at 878, Alexander, 159 F.3d at 1327, and Beeson, 28 F. Supp. 2d at 895, noted, a comprehensive exhaustion requirement better serves the policy of granting an agency the "opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." McCarthy v. Madigan, 503 U.S. 140, 145 (1992); see also Perez, 182 F.3d at 537.11 Moreover, "even if the complaining prisoner seeks only money damages, the prisoner may be successful in having the [prison] halt the infringing practice" or fashion some other remedy, such as returning personal property,

_____

> intended the opposite: to impose one uniform standard requiring
> prisoners to pursue their claims initially through the administrative
> process, without regard to the nature or extent of the relief offered
> by that process in each state.

Beeson, 28 F. Supp. 2d at 893 (citations omitted). When one considers the enormous amount of time federal courts spend reviewing actions filed by inmate-plaintiffs, this argument makes a great deal of sense.

11. The Supreme Court has recognized that this policy is especially important where it implicates agencies of state government. See Preiser v. Rodriguez, 411 U.S. 475, 491–92 (1973) (emphasizing the strength of state prisons' and state courts' interests in resolving complaints filed by

state prisoners). Therefore, this argument has even more strength in the S 1983 context.

19

reforming personal property policies, firing an abusive prison guard, or creating a better screening process for hiring such guards. Alexander, 159 F.3d at 1327; see also Wyatt, 193 F.3d at 878 ("A purpose of the [PLRA] was to insure that prisons have notice of complaints and are given the opportunity to respond to prisoner complaints, particularly legitimate complaints, so that injuries are prevented in the future."). And when a prisoner obtains some measure of affirmative relief, he may elect not to pursue his claim for damages. In either case, local actors are given the chance to address local problems, and at the very least, the time frame for the prisoner's damages is frozen or the isolated acts of abuse are prevented from recurring. See Perez, 182 F.3d at 537–38; Alexander, 159 F.3d at 1327.

An across-the-board exhaustion requirement also promotes judicial efficiency. As Judge Mukasey noted, "A prisoner may use the threat of money damages as a bargaining chip to obtain relief that he really wants, and may then be satisfied when he gets that relief from the prison." Beeson, 28 F. Supp. 2d at 895. Moreover, even if only a small percentage of cases settle, the federal courts are saved the time normally spent hearing such actions and multiple appeals thereto. See id. ("Each case settled through the administrative process is one less case that must be litigated in federal court, with the attendant costs --not only to the judicial system, but also to the parties and to administrative independence--saved.").

In cases in which inmate-plaintiffs exhaust their remedies in the administrative process and continue to pursue their claims in federal court, there is still much to be gained. The administrative process can serve to create a record for subsequent proceedings, it can be used to help focus and clarify poorly pled or confusing claims, and it forces the prison to justify or explain its internal procedures. See Wyatt, 193 F.3d at 878–79; Perez, 182 F.3d at 537–38. All of these functions help courts navigate the sea of prisoner litigation in a manner that affords a fair hearing to all claims.

Finally, applying S 1997e(a) without exception promotes
the efficacy of the administrative process itself, which in

20

our view can be a meaningful and constructive procedure.
Operating at its best, which it admittedly sometimes does
not, a prison administrative grievance procedure will afford
an inmate with the sense of respect. If prison officials treat
his claims with seriousness and care, they may well
discover that he can be easily satisfied. For example, in
Nyhuis's case, returning some of his personal belongings or
revising the prison policy in question may suffice to
ameliorate some of his concerns. In other cases, a letter of
apology, transfer to a more favorable cell block, or
disciplining the prison official who wronged the inmate may
suffice. And if the inmate sees his meritorious claims
handled with care by his jailers, he is more likely to respect
their rules and serve his time in a manner that is as
productive as possible. Most importantly, it is to be hoped
that, under the regime of this case and the PLRA, prison
grievance procedures will receive enhanced attention and
improved administration.

It is also important to observe that, if in the long run,
something of a cooperative ethos can be achieved between
inmate and jailer, the internal administrative process could
prove a less hostile and adversarial forum than that of
federal court. Of course, to serve these purposes, grievance
procedures must be understandable to the prisoner,
expeditious, and treated seriously. Although not necessary
to the holding we reach, as explained in the margin, the
procedures at issue in this case appear to meet these
requirements.12 Without embellishing--for the case law in

(Text continued on page 23)

_____

12. An inmate "may seek formal review of an issue which relates to any
aspect of [his] confinement" under 28 C.F.R. S 542.10 (1999). The
procedure requires that the inmate first address his complaint to the
institution staff, see id. S 542.14(c)(4), within twenty calendar days
following the date on which the basis for the complaint occurred, see id.
S 542.14(a). The staff has twenty calendar days to respond to the
inmate's complaint. See id. S 542.18. If dissatisfied with the response at
that level, the inmate has twenty days to appeal his complaint to the
Regional Director of the Bureau of Prisons. See id. S 542.15(a). The
Regional Director has thirty calendar days to respond. See id. S 542.18.
Finally, the inmate may appeal his case, within thirty calendar days, to
the General Counsel in the Central Office of the Bureau of Prisons,
which is the "final administrative appeal." Id. S 542.15(a). The General

Counsel has forty calendar days to respond the inmate's petition. See id. S 542.18. All told, the process should take no longer than one hundred and eighty days. In fact, counsel for the Defendants has represented that "absent an extension of time granted to the prisoner, the grievance process in 1999 took no more than an average of 162.05 days to complete from the day the grievance arose."

The procedure also insures that inmates are aware of their rights, and that their rights are not forfeited unfairly. It provides that inmates may obtain assistance from other prisoners, institution staff, or outside sources, such as family members or attorneys, infiling their grievances. See id. S 542.16(a). It also imposes the duty on wardens that they "shall insure that assistance is available for inmates who are illiterate, disabled, or who are not functionally literate in English." Id. S 542.16(b).
At each stage of the process, if an inmate is late in filing his complaint,

these time limits may be extended when the inmate demonstrates a valid reason for delay. See id. SS 542.14(b); 542.15(a).

At oral argument, we asked the Justice Department to check with the Bureau of Prisoners whether there would be a tolling of the administrative statutory period when an inmate filed his federal action thinking his administrative remedies were futile, but later the Bureau of Prisons asserted a S 1997e(a) exhaustion defense and the District Court dismissed the inmate's action on this ground. In a letter memorandum, counsel for the Justice Department represented that 28 C.F.R. S 542.14(a) requires that "a prisoner file a formal Administrative Remedy Request within twenty days of the date on which the basis for relief arose. . . ." He further indicated that it was the Bureau of Prisons' (apparently informal) policy that

> [w]here a prisoner files an action in federal court within the twenty-
> day period and the court subsequently dismisses that action for
> failure to exhaust administrative remedies, the Bureau of Prisons
> treats the filing of the action as tolling the limitations period
for
> filing the administrative grievance. . . . Where a prisoner neither
files
> a grievance with prison officials nor files an action in the
federal
> district court within twenty days, the Bureau of Prisons views the
> grievance as time barred should the prisoner's action be dismissed
> for failure to exhaust administrative remedies.

This framework makes little sense. To achieve tolling, an inmate must file his federal action within twenty days. In our experience, few litigants

could properly prepare a federal action within such a short time frame. Moreover, even if the inmate is successful in doing so, the Bureau of

the area will have to develop--we note our understanding that compliance with the administrative remedy scheme will be satisfactory if it is substantial. See, e.g., Miller v. Tanner, 196 F.3d 1190, 1194 (11th Cir. 1999) (recognizing and applying substantial compliance doctrine); Wyatt, 193 F.3d at 879-80 (same).

D.

For the reasons detailed in the Section above, we are not prepared to read the amended language in S 1997e(a) as meaning anything other than what it says--i.e., that no action shall be brought in federal court until such administrative remedies as are available have been exhausted. As Nyhuis admittedly failed to initiate, and therefore exhaust, his available administrative remedies (rather than those he believed would be effective), we will affirm the District Court's order dismissing the action. Since the Magistrate Judge, having properly dismissed the action for failure to exhaust, should not have reached the merits of Nyhuis's claim, that portion of the District Court's decision will be vacated.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit
_____

Prisons can always undercut such an effort by asserting the exhaustion defense. See supra Section II.C.3. The result: The inmate is back in the administrative process. The more sensible rule, and the one we believe Congress intended, is that inmates first test and exhaust the administrative process, and then, if dissatisfied, take the time necessary to file a timely federal action. This rule removes the guesswork and the potential for unfairness that inheres in Justice Department's position.