

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-31-2006

# Jetter v. Beard

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-5184

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Jetter v. Beard" (2006). *2006 Decisions*. Paper 1017.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1017

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

DPS-133                                                                    NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 05-5184
_____

DION JETTER,
Appellant

v.

SECRETARY JEFFREY A. BEARD, Department of Corrections; KEVIN C.
HALLORAN, CEO Wexford Health Sources, Inc.; JOHN MADDEN, Vice President of
Wexford Health Sources, Inc.; JEAN A. HOOVER, Site Administrator for Wexford
Health Sources, Inc. at SCI Huntington; EUGENE POLMUELLER, Psychiatrist for
Wexford Health Sources, Inc. at SCI Huntington; KENNETH D. KYLER, Superintendent
at SCI Huntington; A. SCOTT WILLIAMSON, Deputy Superintendent of Centralized
Services at SCI Huntington; GEORGE N. PATRICK, Deputy Superintendent for Facility
Management at SCI Huntington; BRIAN L. HARRIS, Lieutenant at SCI Huntington
_____

On Appeal From the United States District Court
For the Middle District of Pennsylvania
(D.C. Civ. No. 03-cv-01349)
District Judge: Christopher C. Conner
_____

Submitted For Possible Dismissal Under 28 U.S.C. § 1915(e)(2)(B)
February 16, 2006

BEFORE: ROTH, FUENTES AND VAN ANTWERPEN, <u>CIRCUIT JUDGES</u>

(Filed:  May 31, 2006)
_____

OPINION
_____

PER CURIAM

In August 2003, Dion Jetter, a state prisoner proceeding pro se, initiated the underlying 42 U.S.C. § 1983 action. In his complaint, which he subsequently amended, Jetter alleged that the defendants violated his Eighth and Fourteenth Amendment rights. Specifically, Jetter alleged that on August 29, 2001, defendant Polmueller, a psychiatrist at SCI-Huntingdon, "authorized" defendant Harris to place him "nude," in a "cold strip cell" for five days. Jetter sought compensatory and punitive damages, as well as equitable relief.

By order entered August 6, 2004, the District Court granted a motion to dismiss as to defendants Halloran, Madden, and Hoover, on the ground that Jetter had failed to allege that they had any personal involvement in the underlying events. Defendant Polmueller subsequently filed a motion for summary judgment in which he argued that Jetter's claims lack merit. The five remaining defendants, Beard, Kyler, Williamson, Patrick, and Harris (collectively, "prison defendants"), also filed a motion for summary judgment, arguing that Jetter had failed to properly exhaust his administrative remedies prior to filing suit. By order entered November 15, 2005, the District Court granted the defendants' motions for summary judgment. This timely appeal followed.

This Court has jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review of orders granting motions to dismiss and motions for summary judgment. Gary v. Air Group, Inc., 397 F.3d 183, 186 (3d Cir. 2005); McLeod v. Hartford Life & Acc. Ins. Co., 372 F.3d 618, 623 (3d Cir. 2004). Because Jetter's appeal lacks arguable merit in law or fact, we will dismiss it as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B). See

2

<u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989).

The Prison Litigation Reform Act of 1995 ("PLRA") prohibits an inmate from bringing a civil rights suit alleging specific acts of unconstitutional conduct by prison officials until the inmate has exhausted available administrative remedies. 42 U.S.C. § 1997e(a). The exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered by the administrative procedures." <u>Booth v. Churner</u>, 523 U.S. 731, 741 (2001); <u>see</u> <u>also</u> <u>Nyhuis v. Reno</u>, 204 F.3d 65, 78 (3d Cir. 2000). A prisoner must properly exhaust administrative remedies or risk procedural default. <u>Spruill v. Gillis</u>, 372 F.3d 218 (3d Cir. 2004). To determine whether a prisoner has properly exhausted administrative remedies, the court looks to the prison grievance procedure, not federal law. <u>Id.</u> at 231.

Pennsylvania state inmates have available to them a three-level administrative review process designed to address inmate grievances. <u>See</u> Department of Corrections Administrative Directive ("DC-ADM") 804. As is pertinent here, an initial grievance must be submitted to a Grievance Coordinator within 15 working days after the events upon which the claims are based. DC-ADM 804 § VI.A.1.h. It is undisputed that Jetter did not file his initial grievance until November 8, 2002, more than one year after the events of August 29, 2001, had occurred.[1] It is likewise undisputed that Jetter's initial

_____

[1] We note that Jetter has not alleged that he was somehow prevented by prison authorities from timely pursuing the prison grievance process. <u>See</u>, <u>e.g.</u>, <u>Brown v. Croak</u>, 312 F.3d 109, 112 (3d Cir. 2002) (administrative remedy unavailable where prison security officials told inmate to wait to file grievance until after the investigation was

3

grievance was rejected by Grievance Coordinator Diana Baney because it was untimely. Under these circumstances, we agree with the District Court that Jetter's claims against the prison defendants were procedurally defaulted.

We further agree with the District Court that Jetter's claims against Polmueller lack merit. The Eighth Amendment protects prison inmates from cruel and unusual punishment. See, e.g., Farmer v. Brennan, 511 U.S. 825 (1994). However, not all deficiencies and inadequacies in prison conditions amount to a violation of a prisoner's constitutional rights. See generally Rhodes v. Chapman, 452 U.S. 337, 349 (1981) (noting that the Constitution "does not mandate comfortable prisons"). Instead, the Eighth Amendment "is violated only where an inmate is deprived of 'the minimal civilized measure of life's necessities.'" Tillery v. Owens, 907 F.2d 418, 426 (3d Cir. 1990) (quoting Rhodes, 452 U.S. at 347). Moreover, to be held liable for an Eighth Amendment violation, a defendant must possess a sufficiently culpable state of mind; he must be deliberately indifferent to the inmate's safety. Wilson v. Seiter, 501 U.S. 294, 297-99 (1991).

On August 29, 2001, Polmueller was notified by medical personnel at SCI-Huntingdon that Jetter had threatened to harm himself after attempting to obstruct the view into his cell with his mattress, blanket, and tissue paper. Based on his prior treatment of Jetter, Polmueller determined that it was unnecessary to move Jetter from his

---

complete); Camp v. Brennan, 219 F.3d 279, 281 (3d Cir. 2000) (administrative remedy unavailable where inmate put on grievance restriction).

cell in the Restricted Housing Unit ("RHU") to a psychiatric observation cell. Nonetheless, as a precaution, Polmueller recommended that correctional officers remove any items from Jetter's cell with which he could harm himself. Polmueller, however, did not recommend that Jetter's cell be "stripped" or that Jetter be left "naked" in his cell. Thus, Polmueller's recommendation – that potentially dangerous items be removed from Jetter's cell – was made not to humiliate or harm Jetter, but to ensure Jetter's safety and further legitimate penal concerns. Under these circumstances, we agree with the District Court that Jetter's Eighth Amendment claim fails.

Jetter also contends that Polmueller violated his due process rights by ordering that his cell be stripped on August 29, 2001. Due process protections are not required unless the discipline at issue imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Connor, 515 U.S. 472, 484 (1995). Even assuming arguendo that Jetter had a protected liberty interest in avoiding a five-day confinement in a "strip cell," his due process claim fails. It is undisputed that, with the exception of his limited authority to order an inmate placed in a psychiatric observation cell, Polmueller does not have any authority at SCI-Huntingdon regarding cell placement or housing assignments. Likewise, it is undisputed that Polmueller does not have any authority to specify clothing or property that inmates are allowed to have in an RHU cell. Thus, as the District Court concluded, because the conditions of confinement about which Jetter complains were not inflicted by Polmueller, Jetter's due process claim lacks merit.

Finally, we agree with the District Court that Jetter failed to state a claim against Halloran, Madden, or Hoover. Liability under § 1983 cannot be imposed on the basis of respondeat superior. Personal involvement must be alleged and is only present where the supervisor directed the actions of supervisees or actually knew of the actions and acquiesced in them. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Because Jetter simply failed to allege any facts to support a conclusion that Halloran, Madden, or Hoover had any personal involvement in the events of August 29, 2001, the District Court did not err in dismissing Jetter's claims against them.

Having found no merit to this appeal, we will dismiss it pursuant to 28 U.S.C. § 1915(e)(2)(B).