**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 19-2650

_____

QUINTEZ TALLEY,
Appellant

v.

C/O CONSTANZO; C/O BROCCOLIER; DEPT. OF CORRECTIONS; LT. REBER

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2:18-cv-05416)
District Judge: Honorable Timothy J. Savage

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
October 13, 2022

Before: GREENAWAY, JR., PORTER, and NYGAARD, Circuit Judges

(Opinion filed: December 1, 2022)

_____

OPINION[*]

_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

PER CURIAM

Pennsylvania state prisoner Quintez Talley appeals pro se from the District Court's order granting the defendants' motion to dismiss Talley's complaint for failure to exhaust his administrative remedies. For the reasons that follow, we will modify that order and affirm it as modified.

I.

In December 2018, Talley filed a pro se civil rights complaint in the District Court against the Pennsylvania Department of Corrections ("DOC") and three DOC employees — Corrections Officers Kyle Bruccoliere and Jonathan Costanzo, and Lieutenant Andrew Reber.[1] The complaint alleged as follows.

In early July 2017, when Talley was incarcerated at SCI-Graterford, Bruccoliere agreed to obtain extra commissary items for Talley — beyond what was permitted by the prison — in exchange for Bruccoliere's keeping a percentage of that excess. Costanzo was involved in this scheme, too. In the weeks that followed, Talley's relationship with Bruccoliere and Costanzo "soured." (Compl. 3.) The two corrections officers apparently took a larger percentage of Talley's commissary items than they were supposed to, and Costanzo "openly denied [Talley] his dinner tray" on August 22, 2017. (Id.) Two days later, Talley gave Reber, who was a security officer at SCI-Graterford, "an oral and written statement . . . regarding the coercion and/or extortion" committed by Bruccoliere and Costanzo. (Id. at 4.)

_____

[1] Talley's complaint misspelled the surnames of two of the defendants. Although the case caption mirrors the complaint, we use the correct spelling in this opinion.

2

After Talley made those statements to Reber, Talley experienced "an entirely new degree of harassment" at the hands of Bruccoliere and Costanzo. (Id.) The two corrections officers stole four of Talley's books and other property, told people that Talley was a "rat" and a "snitch," (id.), and "made comments about wishing [Talley] was dead so much that they'd poison [him]," (id. at 5). Additionally, Costanzo "engaged in racially motivated harassment" when he laughed at another corrections officer's racist remarks and behavior. (Id.) As for Reber, he was reassigned shortly after receiving Talley's statements, and Talley never received a response to them.

In light of these allegations, Talley raised claims under the United States Constitution, certain federal statutes, and Pennsylvania state law. He sought damages, as well as declaratory and injunctive relief. He claimed to have exhausted his administrative remedies, though he also alleged that, "at the timeframes that fall outside of [his] report to Lt. Reber, [Talley] was on close/suicide watch . . . and hadn't be[en] cleared to possess any form of writing utensil." (Id. at 6.)

The defendants (hereinafter "Appellees") moved to dismiss Talley's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). That motion did not address the complaint's merits; instead, it argued that the complaint was subject to dismissal based on Talley's failure to exhaust his administrative remedies. In support of this argument, Appellees filed a copy of each prison grievance that Talley had submitted pursuant to the DOC's Inmate Grievance System, DC-ADM 804, while incarcerated at SCI-Graterford. None of those grievances had raised any of the allegations presented in Talley's complaint.

Talley opposed Appellees' motion to dismiss, appearing to argue that he had exhausted his administrative remedies under DC-ADM 001, which covers allegations of inmate "abuse," by giving an oral statement and a written statement to Reber. Talley attached to his opposition filing a copy of that written statement, which had been prepared using a DC-ADM 001 form titled "Inmate Written Statement" (hereinafter IWS). Talley's IWS began by noting that Bruccoliere and Costanzo had given him items from the commissary, that these two corrections officers "use the commissary that they have to cook food," that "[t]hey feed the inmates they wish to gain favor with," that Costanzo had given Talley tobacco when Talley's commissary allotment had run out, and that, on August 22, 2017, Costanzo told Talley to "stand at the back of [his] cell to receive a tray." (Dist. Ct. docket # 18, at 10.) But the IWS did not specifically allege that Costanzo had denied Talley his food tray, nor did the IWS mention any of the other allegations that formed the basis of the claims that Talley brought against Appellees in the District Court. Instead, the remainder of the five-page IWS recounted Talley's own behavior (which included flooding his cell and setting fire to toilet paper) and made various allegations against prison officials who are not parties to this lawsuit.

Talley's opposition to the motion to dismiss also identified the dates on which he had been on "close/suicide" watch at SCI-Graterford — December 15, 2017, to January 30, 2018. He argued, with respect only to his allegation about the stolen books, that his lack of access to a writing implement while on "close/suicide" watch prevented him from grieving that allegation. But his complaint had alleged that he did not even learn that the

4

books had been stolen until after he had been transferred from SCI-Graterford to another DOC prison.

After Appellees replied to Talley's opposition filing, the District Court granted Appellees' motion to dismiss. In doing so, the District Court observed that none of Talley's DC-ADM 804 grievances "covers, directly or indirectly, his claims in the complaint," (Dist. Ct. Mem. Op. 6), and that the IWS "does not detail the events that give rise to the claims in his complaint, (id. at 8). Additionally, the District Court rejected Talley's argument that his administrative remedies were unavailable due to his lack of access to a writing implement from December 15, 2017, to January 30, 2018. In view of its exhaustion analysis, the District Court dismissed Talley's federal claims with prejudice, declined to exercise supplemental jurisdiction over his state-law claims, and dismissed the state-law claims without prejudice. This timely appeal followed.[2]

II.

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). As the District Court explained, "[a] grievance . . . 'must at least alert[] the prison to the nature of the wrong for which redress is sought.'" (Dist. Ct. Mem. Op. 9 (quoting Mack v. Warden Loretto FCI, 839 F.3d 286, 295 (3d Cir. 2016)).)

---

[2] We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, and we exercise plenary review over the District Court's dismissal order. See Talley v. Wetzel, 15 F.4th 275, 286 n.7 (3d Cir. 2021).

5

A plaintiff's failure to exhaust his administrative remedies is an affirmative defense that, in an appropriate case, may be raised in a motion to dismiss.  Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002).  When a defendant files such a motion and "the exhaustion issue turns on [] indisputably authentic documents related to [the inmate's] grievances, [a court] may consider those documents without converting [a motion to dismiss] to a motion for summary judgment."  Rinaldi v. United States, 904 F.3d 257, 261 n.1 (3d Cir. 2018) (third alteration added) (internal quotation marks omitted).  In this case, the authenticity of Talley's IWS and the grievances that he submitted pursuant to DC-ADM 804 are not in dispute.[3]

We agree with the District Court's decision to dismiss Talley's federal claims for lack of exhaustion.[4]  As the District Court highlighted, neither Talley's IWS nor his DC-

---

[3] The current policies and procedures governing DC-ADM 804, effective since 2015, are available at the DOC's website, https://www.cor.pa.gov.  That website also has a copy of the current policies and procedures governing DC-ADM 001, which have been effective since April 11, 2022.  Talley attached to his brief an earlier version of the DC-ADM 001 policies and procedures.  (See 3d Cir. docket # 55, at 112-28.)  In all respects relevant to this appeal, the earlier version is the same as the current version.

[4] Because Talley's federal claims were subject to dismissal, the District Court properly declined to exercise supplemental jurisdiction over his state-law claims.  See Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000).

ADM 804 grievances alerted Appellees to these claims.[5] And since Talley alleged that he did not learn that his books had been stolen until after his transfer to another prison, he cannot show that his administrative remedies were unavailable based on his allegedly not having access to a writing implement *before* that transfer.[6] To the extent that Talley argues that it would have been futile for him to grieve the stolen books because he did not learn of the theft within the 15-working-day deadline that governs the submission of grievances under DC-ADM 804, see DC-ADM 804 Procedures Manual § 1.A.8, this argument is unpersuasive. This Court "do[es] not recognize a futility exception to exhaustion [under the PLRA]," Downey v. Pa. Dep't of Corr., 968 F.3d 299, 307 (3d Cir.

---

[5] As mentioned earlier, Talley alleges that, on August 24, 2017, he made both an oral statement and a written statement to Reber. Although DC-ADM 001 permits both types of statements, see DC-ADM 001 Policy Statement § IV.D.1, there is no indication that the content of Talley's oral statement to Reber was different from the content of Talley's IWS. And even if there were a difference, such that the oral statement included allegations from Talley's complaint about (1) Bruccoliere's and Costanzo's taking too many of Talley's commissary items and (2) Costanzo denying Talley his food tray on one occasion, those allegations would not properly fall under the ambit of DC-ADM 001. See DC-ADM 001 Procedures Manual Glossary (defining "abuse" as being limited to "the use of excessive force upon an inmate," "the improper use of force upon an inmate," "an occurrence of an unwarranted life-threatening act against an inmate," or "an articulated verbal or written threat to inflict physical injury directed toward an inmate"); see also Jones v. Bock, 549 U.S. 199, 218 (2007) ("[T]o properly exhaust administrative remedies[,] prisoners must complete the administrative review process in accordance with the applicable procedural rules[]—rules that are defined not by the PLRA, but by the prison grievance process itself." (internal quotation marks omitted)).

[6] As noted earlier, it was Talley's response to Appellees' motion to dismiss that (1) identified the dates on which he allegedly lacked access to a writing implement and (2) alleged that this lack of access prevented him from grieving his stolen-books claim. We may consider these allegations in evaluating that motion. Cf. Mack, 839 F.3d at 291 n.2 (considering the plaintiff's "allegations made in response to the defendants' motion to dismiss, which incorporate and are consistent with the allegations in his complaint").

2020); see Nyhuis v. Reno, 204 F.3d 65, 71 (3d Cir. 2000), and, in any event, Talley has not shown futility because he could have moved for an extension of the 15-working-day deadline, see DC-ADM 804 Procedures Manual § 1.C.2. Finally, although an administrative remedy is deemed unavailable when prison officials "thwart inmates from taking advantage of a grievance process through . . . intimidation," Ross v. Blake, 578 U.S. 632, 644 (2016), we are not persuaded by Talley's argument that those circumstances are present in this case, see Rinaldi, 904 F.3d at 269 (explaining that the unavailable-due-to-intimidation exception applies only if (1) the inmate was subject to a "threat [that] was sufficiently serious that it would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance," and (2) "the threat actually did deter this particular inmate").

Although we agree with the District Court's dismissal of Talley's federal claims for lack of exhaustion, that dismissal should have been without prejudice, not with prejudice. See Garrett v. Wexford Health, 938 F.3d 69, 81 n.16 (3d Cir. 2019). Accordingly, we will modify the District Court's dismissal order, entered July 3, 2019, so that the dismissal is without prejudice, and we will affirm that order as modified.[7] Talley's motion for oral argument is denied, as is his "Motion for the Appointment of Standby Counsel, Alternatively an Injunction." Appellees' motion to supplement the appendix is denied as well.[8]

---

[7] To the extent that Talley's appeal also challenges the District Court's May 20, 2019 order denying his motion to take discovery, we see no reason to disturb that ruling.

[8] Appellees ask us to consider a handwritten document that bears Talley's signature and a date that falls within the period in which he allegedly lacked access to a writing

8

implement. This document, which was not part of the District Court record in this case, would certainly undermine Talley's argument that his administrative remedies were unavailable. But since we have already rejected this argument on different grounds, this case does not present exceptional circumstances warranting supplementation of the record on appeal. See Burton v. Teleflex Inc., 707 F.3d 417, 435 (3d Cir. 2013).