

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-30-1998

# Jenkins v. Morton

Precedential or Non-Precedential:

Docket 97-5801

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"Jenkins v. Morton" (1998). *1998 Decisions.* Paper 148.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/148

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed June 30, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 97-5801

HASSAN JENKINS,

      Appellant

v.

WILLIS MORTON, as an individual and in his official
capacity as Administrator, New Jersey State Prison;
SHIRLEY TYLER, as an individual and in her
official capacity as Assistant Superintendent,
New Jersey State Prison;
J. MCGOVERN, as an individual and in his official
capacity as Disciplinary Hearing Officer

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. No. 97-03159)

Submitted under Third Circuit LAR 34.1(a)
June 11, 1998

BEFORE: GREENBERG, SCIRICA, and NYGAARD,
Circuit Judges

(Filed: June 30, 1998)

      Hassan Jenkins

       Appellant pro se

Peter Verniero
Attorney General of New Jersey
Mary C. Jacobson
Assistant Attorney General
Ronald L. Bollheimer
Deputy Attorney General
Office of Attorney General of
New Jersey
Department of Law & Public Safety
Division of Criminal Justice
Richard J. Hughes Justice Complex
Trenton, NJ 08625

Attorneys for Appellees

OPINION OF THE COURT

GREENBERG, Circuit Judge.

Appellant Hassan Jenkins, an inmate at the New Jersey State Prison, proceeding in forma pauperis under 28 U.S.C. S 1915, brought this action under 42 U.S.C. S 1983 on August 13, 1997, against appellees Willis E. Morton, individually and as administrator of the prison, Shirley Tyler, individually and as assistant superintendent of the prison, and James McGovern, individually and as a disciplinary hearing officer. The complaint asserted that the appellees had violated Jenkins' due process and equal protection rights in disciplinary proceedings in which sanctions were imposed. The original sanction period imposed in those proceedings was reduced on Jenkins' administrative appeal. It is undisputed that the administrative appeal exhausted Jenkins' conventional administrative remedies, and it is also undisputed that Jenkins did not appeal from the imposition of the reduced sanctions to the Superior Court of New Jersey, Appellate Division, as authorized as of right by N.J. Ct. R. 2:2-3(a)(2).

The summons and complaint were served on Morton and Tyler but McGovern was not served. Morton and Tyler moved to dismiss the complaint pursuant to the Prison Litigation Reform Act of 1996, which, insofar as germane here, provides:

2

> No action shall be brought with respect to prison
> conditions under [42 U.S.C. S 1983], or any other
> Federal Law, by a prisoner confined in any jail, prison,
> or other correctional facility until such administrative
> remedies as are available are exhausted.

42 U.S.C. S 1997e(a). The district court, in ruling on the
motion to dismiss, explained that the New Jersey
Administrative Code provides a grievance procedure for
challenging disciplinary decisions and that once the
"inmate has exhausted the remedies provided by the
Administrative Code, he has an automatic right to appeal
the decision to the Superior Court of New Jersey, Appellate
Division" under N.J. Ct. R. 2:2-3(a)(2).1

The court then indicated:

> that the sanction imposed upon the plaintiff by the
> Department of Corrections was a final agency decision
> and as such, upon exhausting the remedies available
> to him through the Administrative Code, plaintiff's
> next remedy was to challenge the decision with the
> Appellate Division. This Court further notes, that
> plaintiff failed in this case to challenge the decision in
> the Superior Court of New Jersey, Appellate Division.
> As such, plaintiff has failed to exhaust all
> administrative remedies available to him.

Accordingly, the court concluded that inasmuch as Jenkins
had "failed to exhaust all administrative remedies available
to him, [his] complaint must be dismissed in accordance
with the [Prison Litigation Reform Act of 1996]." Thus, the
court entered an order on November 21, 1997, dismissing
the complaint as to all defendants and closing the case.
Jenkins then appealed. We exercise plenary review on this
appeal.

This appeal raises a narrow but important point: did
Congress intend to include appeals to the state judicial
system within the administrative remedies which a prisoner

_____

1. The Administrative Code provisions for appeal of disciplinary decisions
are set forth in N.J. Admin. Code tit. 10A, S 4-11.1 et seq. (1996). We
need not describe them in detail as appellees do not contend that
Jenkins did not exhaust them.

3

must exhaust before bringing an action described in section 1997e(a)?2 We recognize that it might be sensible for Congress to provide that a prisoner first exhaust both his state administrative and judicial remedies before bringing an action described within section 1997e(a). But the problem with our observation, and thus with the district court's opinion, is that there is a well-established distinction between administrative and judicial remedies and Congress, in terms, did not mandate that the prisoner must exhaust his administrative remedies and exhaust his right to judicial appellate review before bringing an action within section 1997e(a). McCarthy v. Madigan, 503 U.S. 140, 112 S.Ct. 1081 (1992), highlights the distinction between administrative and judicial remedies because the Court, in discussing exhaustion of administrative remedies, explained:

> [E]xhaustion promotes judicial efficiency in at least two ways. When an agency has the opportunity to correct its own errors, a judicial controversy may well be mooted, or at least piecemeal appeals may be avoided. And, even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration, especially in a complex or technical factual context.

Id. at 146, 112 S.Ct. at 1086-87 (citations omitted).

We also observe that the Supreme Court has stated that "policy considerations alone cannot justify judicially imposed exhaustion unless exhaustion is consistent with congressional intent." Patsy v. Board of Regents, 457 U.S. 496, 513, 102 S.Ct. 2557, 2566 (1982). Moreover, Patsy makes clear that exhaustion of administrative remedies ordinarily is not required before a plaintiff may bring a 42 U.S.C. S 1983 action. Thus, the exhaustion requirements in section 1997e(a) run counter to the general rule under 42 U.S.C. S 1983. In the circumstances, we naturally are reluctant to apply section 1997e(a) to mean other than what it says: the prisoner must exhaust his "administrative

_____

2. We note that the appellees do not contend that this action is not a type of case governed by section 1997e(a).

4

remedies" as that term is conventionally understood, but need not exhaust state judicial remedies before bringing an action governed by that section.

The little direct judicial precedent germane under section 1997e(a) supports our result. Thus, in Alexandroai v. California Dep't of Corrections, 985 F. Supp. 968 (S.D. Cal. 1997), the court described exhaustion under section 1997e(a) as follows:

> Before refiling, Plaintiff must exhaust all available administrative remedies pursuant to 42 U.S.C. S 1997e(a). Thus, in addition to filing his inmate appeal forms, Plaintiff must submit a formal appeal for second level review. If unsuccessful at that level, Plaintiff must then submit a formal appeal for third level review to the director of the California Department of Corrections or the director's designee. Only after Plaintiff has gone through each of these steps may he be said to have exhausted his available administrative remedies.

Id. at 970. Similarly in Hobson v. DeTella, 1997 WL 619822 (N.D. Ill. Sept. 30, 1997), the court described exhaustion under section 1997e(a) as follows:

> The formal grievance procedure allows an inmate to file a written grievance addressed to the Grievance Officer. 20 Ill. Adm. Code. Sec. 504.810. Upon reviewing the written grievance, the Grievance Officer makes a recommendation to the warden of the facility or his designee. The inmate then receives a decision. 20 Ill. Adm. Code Sec. 504.830.
>
> If the inmate feels that the Grievance Officer did not resolve the matter to his satisfaction, the inmate can appeal to the Director of the Department of Corrections (`Director'). The Director determines if the grievance requires a hearing before the Administrative Review Board (`Board'). If a hearing is required, the Board schedules one and submits its findings to the Director. The Director reviews the findings and makes afinal determination about the grievance. 20 Ill. Adm. Code Sec. 504.850. Once the Board issues a final decision, the inmate has exhausted all available administrative

remedies. See Rhoden v. Detella, No. 95 C. 6585, 1996 WL 5566975 *4 n.2 (N.D. Ill. Sept. 27, 1996).

Id. at *2. It will be noted that neither court mentioned that judicial review was an administrative remedy.

For the foregoing reasons we will reverse the order of the district court entered November 21, 1997, and will remand the case to that court for further proceedings consistent with this opinion. Obviously we do not imply that we have a view on whether this action is meritorious. The parties will bear their own costs on this appeal.

A True Copy:
Teste:

Clerk of the United States Court of Appeals
for the Third Circuit