**Ali AHMED, (Hiram McGill) Plaintiff,**

v.

**Joseph SROMOVSKI, et al., Defendants.**

No. CIV. A. 98–2548.

United States District Court, E.D. Pennsylvania.

June 26, 2000.

Wendy Bettlestone, Schnader Harrison Segal & Lewis, Philadelphia, PA, for plaintiff.

Dalinda E. Currero, Kiersten M. Murray, Office of Atty. Gen., Philadelphia, PA, for defendants.

### EXPLANATION & ORDER

ANITA B. BRODY, District Judge.

Plaintiff Ali Ahmed ("Plaintiff"), an inmate at the State Correctional Institution at Mahanoy ("Mahanoy") filed this action under 42 U.S.C. § 1983 alleging that Corrections Officer Joseph Sromovski and Sergeant John Eichenberg ("Defendants") violated his Eighth Amendment right to be free from cruel and unusual punishment on April 3, 1998 while plaintiff was housed in the Restrictive Housing Unit ("RHU") at Mahanoy.[1] Defendants have filed a motion for summary judgment and a supplemental motion for summary judgment.

### I. PROCEDURAL HISTORY

Plaintiff filed a motion to proceed *in forma pauperis* on May 15, 1998. On May 20, 1998, this case was closed for failure to comply with filing fee requirements and reinstated on July 29, 1998. Plaintiff filed a *pro se* complaint on July 29, 1998. On September 14, 1998, defendants filed a motion to dismiss plaintiff's complaint. Defendants asserted that because plaintiff's complaint failed to allege that he had exhausted his available administrative remedies, his complaint must be dismissed without prejudice pursuant to Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). In that motion, defendants contended that exhaustion of administra-

tive remedies requires completion of the three-step formal grievance procedure set forth in the Pennsylvania Department of Corrections Consolidated Inmate Grievance Review System, DC–ADM 804. On September 18, 1998, plaintiff filed an opposition to defendants' motion. Plaintiff stated that he had filed a grievance on April 8, 1998 "to which nothing was accomplished." On January 7, 1999, plaintiff filed "a motion to amend his motion in opposition to defendants' motion." In that motion, plaintiff asserted that on September 17, 1998, he appealed the denial of his grievance to Superintendent Dragovich and on October 6, 1998, he appealed Dragovich's response to final review.[2] On February 1, 1999, I granted plaintiff's motion for appointment of counsel[3] and denied defendants' motion to dismiss. Defendants filed an answer and affirmative defenses on February 8, 1999. Defendants asserted, as an affirmative defense, that plaintiff had failed to allege any facts that warrant relief pursuant to the PLRA.

On November 8, 1999, defendants filed a motion for summary judgment. Plaintiff filed a reply on December 7, 1999. Following the United States Court of Appeals for the Third Circuit's February 15, 2000 decision in *Nyhuis v. Reno*, 204 F.3d 65 (3d Cir.2000), in which the court addressed the PLRA's exhaustion requirement, defendants filed a supplemental motion for summary judgment, arguing that plaintiff had failed to exhaust his available administrative remedies.[4] Plaintiff responded to defendants' supplemental motion on April 17, 2000. On April 28, 2000, defendants filed a reply to plaintiff's response.

---

1. Plaintiff also sued Superintendent Dragovich, Secretary Horn, and Lieutenant Mahally. On July 28, 1998, I dismissed plaintiff's claims against these defendants as frivolous.

2. The record indicates that the actual dates of plaintiff's appeals are September 16, 1998 and September 18, 1998. Defs. Suppl.Mot.Summ.J at Ex. H–4, H–6.

3. Wendy Bettlestone, acting pro bono, represented Mr. Pearson. I appreciate the high

quality of submissions filed with this court by Ms. Bettlestone on Mr. Pearson's behalf.

4. In their supplemental motion, defendants explained that the November 1999 motion for summary judgment addressed the merits of plaintiff's claims, however, the supplemental motion addressed only plaintiff's failure to exhaust. In light of *Nyhuis*, they believed a supplemental motion was necessary.

## II. FACTS

The incident at issue in this case occurred on April 3, 1998 when plaintiff was housed in A Pod, Cell 7 in the RHU at Mahanoy.[5]  On that date, defendant Eichenberg was one of six officers assigned to the RHU exercise crew.[6]  Defendant Sromovski was assigned to work on A Pod on the 6:00 a.m. to 2:00 p.m. shift.  In the early morning of April 3, 1998, before the incident took place, plaintiff and defendant Sromovski argued briefly.  Defendant Sromovski gestured to plaintiff with his middle finger, in response, plaintiff yelled profanities at defendant Sromovski and made sexual comments about defendant Sromovski's wife.  Pl. Dep. 147, 152–53.  After the dispute ended, plaintiff cleaned his cell and took a nap.  Pl. Dep. 155–56.  Although plaintiff had signed up for yard exercise, plaintiff did not go because he wanted to clean his cell.  *Id.*  Later that morning, defendant Eichenberg, as part of the exercise crew, began escorting inmates from the yard to their cells on A Pod. Defendant Sromovski assisted with this process.

According to plaintiff, he was awakened by the sound of his cell door opening.  Pl. Dep at 164.  From his bed, plaintiff saw defendant Eichenberg and defendant Sromovski talking; defendant Sromovski was standing in the doorway.  Pl. Dep. at 167–70.  Then defendant Sromovksi said to plaintiff "What's up, come on out, pussy."  Pl. Dep at 171.  Plaintiff responded, "I said get out of my cell, leave me the fuck alone."  Pl. Dep. at 171.  Plaintiff then got out of bed and pulled his jumpsuit up to his waist, tying the sleeves around his waist.  Defendant Sromovski repeated, "What's up, come on out, pussy" and called plaintiff "a fake fucking Muslim."  Pl. Dep. at 175.  As Sromovski came into plaintiff's cell, plaintiff moved forward slightly because he believed that Sromovski was going to hit him.  Pl. Dep. at 186–87.  Ac-

cording to plaintiff, defendant Sromovski then punched him in the face and pushed him, with two hands, into a metal desk.  Pl. Dep. at 191–94.  Plaintiff fell to the floor.  Defendant Sromovski left plaintiff's cell and defendant Eichenberg closed the cell door.

As a result of the alleged attack, plaintiff asserts that he suffered injuries including a lower back injury and a pulled muscle in his neck.  After plaintiff fell, he could not get up because his lower back hurt when he moved.  Pl. Dep. at 193, 199–200, 205–09.  Plaintiff requested to see a member of the medical staff and receive medical treatment for his back and neck pain.  Pl. Dep. at 196–97; 211.  Shortly after plaintiff made this request, a nurse arrived at plaintiff's cell to examine him.  Pl. Dep. at 212.  Plaintiff told the nurse that he could not move because of neck and back pain.  Pl. Dep. at 226.  A stretcher was brought to plaintiff's cell and he was carried to the infirmary on the stretcher.  Pl. Dep. at 216, 228.  After arriving at the infirmary, plaintiff was examined by Dr. Hipps, the prison physician, and admitted for observation.  Dr. Hipps ordered that plaintiff be given non-prescription Tylenol and that X-rays be taken of plaintiff's lower back.  Dr. Hipps diagnosed plaintiff with a neck strain and also noted a mild contusion on plaintiff's back.  After plaintiff was released from the infirmary, plaintiff returned to his cell and ordered to "lay in" or stay still in his cell for four days.  Plaintiff maintains that he suffered constant back pain during the week following the incident.  As a result of his pain, plaintiff made numerous requests that he be examined by a back specialist.  Currently, plaintiff alleges that he experiences a few seconds of pain approximately six times a day.  Pl. Dep. at 247–48; 260.  According to plaintiff, he suffers back pain as a result of the use of excessive force by Sromovski

---

**5.**  Plaintiff testified that he was housed in disciplinary custody because of inmate misconducts issued against him.  Pl.Dep. at 28–29, 33.

**6.**  The other five officers assigned to the exercise crew were Officers Friendly, McNeal, Shoemaker, Storm, and McNich.

and did not suffer from back pain prior to April 3, 1998. Pl. Dep. at 246–47.

Following the April 3, 1998 incident, a misconduct was filed against plaintiff by defendant Sromovski for assaulting an officer; specifically for charging Sromovski in an aggressive manner. Defs. Mot. Summ. J. Ex. C. Attach. P–15. After a misconduct hearing, plaintiff was found guilty and sanctioned to disciplinary custody time.[7]

On April 8, 1998, plaintiff filed a grievance (MAH–134–98) regarding the April 3, 1998 incident.[8] Defs. Suppl. Mot. Summ. J. at Ex. H–2. On April 23, 1998, a grievance coordinator responded to plaintiff's grievance and stated that following an investigation of the incident, the grievance coordinator determined that plaintiff's claims lacked merit.[9] *See id.* at Ex. H–3. Plaintiff did not appeal this response to Superintendent Dragovich ("Dragovich") until September 16, 1998. *See id.* at Ex. H–4; Bitner Decl. at ¶ 10. One day later, Dragovich responded that he was returning plaintiff's appeal as untimely. Defs. Suppl. Mot. Summ. J at Ex. H–5; Bitner Decl. at ¶ 11. Dragovich explained that plaintiff's "original grievance was filed on 4/8/98 and responded to on 4/23/98. You have five days in which to file your appeal with this office and it is now five months later."[10] Defs. Suppl. Mot. Summ. J. at Ex. H–5. In that response, Dragovich also stated that "[f]or the record" an internal investigation concluded that plaintiff's claim was without merit. *Id.* On September 18, 1998, plaintiff appealed to the Central Office Review Committee ("CORC"). *See id.* at Ex. H–6. Chief Hearing Examiner for the Pennsylvania Department of Corrections, Robert Bitner ("Bitner") responded to plaintiff's appeal on October 6, 1998, stating that plaintiff had failed to file a timely appeal of the response to his grievance. Bitner at ¶¶ 10, 11. Therefore, plaintiff had "failed to complete appeal to the Superintendent as required pursuant to DC–ADM 801(sic).[11] Accordingly, [plaintiff's] appeal to final review cannot be accepted and must be dismissed." *See id.* at Ex. H–7; Bitner Decl. ¶ 13. Plaintiff testified that he was familiar with the grievance system and "use[d] it a lot." Pl. Dep. at 95.

On April 14, 1998, Superintendent Dragovich wrote to plaintiff, informing him that Dragovich was placing plaintiff on grievance restriction pursuant to Section V.C. of DC–ADM 804.[12] Pl. Resp. at Ex. 3. In the letter, Dragovich explained that

7. Plaintiff appealed this misconduct to two levels of appeal. The sanction was affirmed at both levels.

8. Additionally, on May 22, 1998, plaintiff filed a complaint with the Schuylkill County District Attorney alleging that defendant Sromovski assaulted him. Plaintiff's complaint was then sent to the DOC Office of Professional Responsibility for investigation. That office forwarded the complaint to Mahanoy. On June 26, 1998, a report was issued, summarizing staff accounts of the incident and concluding that no further action was necessary. Pl.Resp. at Ex. 2.

9. The grievance officer stated that after reviewing written reports and interviewing witnesses, he determined that plaintiff had charged his door and attempted to assault defendant Sromovski. He stated that Sromovski used the amount of force necessary to push plaintiff back into his cell. (Ex. H–3). He also noted that the nurse who examined plaintiff said that he did not have any injuries.

10. Under DC–ADM 804, plaintiff must appeal a grievance response within five days of receipt of the decision. Bitner Decl. at ¶ 10.

11. In Bitner's response, he referred to DC–ADM 801, the administrative procedure which addresses inmate misconducts. However, when quoting the October 6, 1998 response letter in his declaration, Bitner includes "(sic)" following the reference to DC–ADM 801. Bitner Decl. at ¶ 13. In his declaration, Bitner refers only to DC–ADM 804 when discussing plaintiff's failure to appeal to final review. Bitner Decl. at ¶ 10. Therefore, it appears that Bitner intended to refer to DC–ADM 804 in his response.

12. At his September 1999 deposition, plaintiff testified that he believed he was "still on" grievance restriction. Pl.Dep. at 95. When asked if he had been restricted for over a year, plaintiff stated that he was not sure how long he had been restricted. *See id.*

because plaintiff's use of the grievance system was considered "excessive," plaintiff would be "limited to filing one grievance per month." *Id.* Dragovich noted that plaintiff filed eighteen grievances between June 13, 1997 and April 9, 1998. *Id.* Six of those grievances were filed during "the past 6 weeks" and five during a recent eleven day period. *Id.* Dragovich calculated that the grievances filed by plaintiff made up 4.4% of all grievances filed by inmates at Mahanoy during the June 1997 to April 1998 time period. *Id.* The letter also noted "there are indications that you are exhorting other inmates to file similar complaints and to corroborate your false claims." *Id.* In addition, Dragovich stated "[y]ou are to give staff their entitled 5 days to respond to [inmate] requests and 10 working days [to respond] to grievances before processing the next level." *Id.*

## III. DISCUSSION

Defendants argue that plaintiff's failure to exhaust administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a) mandates dismissal of this action.[13] I will now evaluate defendants' argument that plaintiff failed to exhaust his available administrative remedies because the PLRA exhaustion requirement "can function properly only if the judge resolves dis-

putes about its application before turning to any other issue in the suit." *Perez v. Wisconsin Department of Corrections,* 182 F.3d 532, 536 (7th Cir.1999).[14] Therefore, "the court must not proceed to render a substantive decision until it has first considered § 1997e(a)." *Id.*[15]

### *Failure to Exhaust Administrative Remedies*

The PLRA provides, in relevant part, that:

No action shall be brought with respect to prison conditions under section 1983 of this title or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

Before filing a federal lawsuit concerning an excessive force claim, a plaintiff-inmate must exhaust his administrative remedies, even if the ultimate relief sought is not available through the administrative process. *See Booth v. Churner,* 206 F.3d 289, 300 (3d Cir.2000). Section 1997e(a) " 'specifically mandates' that inmate-plaintiffs exhaust their available administrative remedies." *Nyhuis,* 204 F.3d at 73 (internal citations omitted). Therefore, "it is beyond the power of this court

---

**13.** Plaintiff asserts that failure to exhaust administrative remedies is an affirmative defense. Plaintiff argues that defendants did not raise the exhaustion issue in their answer, and thus, defendants have waived this defense. However, in their answer filed February 9, 1999, defendants asserted that "Pursuant to the Prison Litigation Reform Act, plaintiff has failed to allege any facts which would warrant relief." In their motion to dismiss filed September 11, 1998, defendants moved to dismiss plaintiff's complaint for failure to exhaust administrative remedies. In addition, the Third Circuit has not articulated whether the PLRA exhaustion requirement is an affirmative defense or a condition precedent to filing. Cf. *Williams v. Runyon,* 130 F.3d 568, 573 (3d Cir.1997) (holding that in the context of a Title VII case, the failure to exhaust administrative remedies is an affirmative defense).

**14.** The Third Circuit has determined that the PLRA's exhaustion requirement is not jurisdictional. *See Nyhuis,* 204 F.3d at 69 n. 4 (noting that the Fifth, Sixth, Seventh, and Tenth Circuits have also held that § 1997e(a) is not a jurisdictional requirement).

**15.** Defendants address the merits of plaintiff's claims in their November 1999 motion for summary judgment. Because, as discussed in this order, I determine that plaintiff has failed to exhaust his administrative remedies as required by the PLRA, I will not address the merits of plaintiff's claims. *See Nyhuis,* 204 F.3d at 78 (affirming the dismissal of plaintiff's complaint for failure to exhaust, but vacating the portion of the district court's opinion addressing the merits of plaintiff's claims explaining that the Magistrate Judge should not have reached the merits of plaintiff's action).

... to excuse compliance with the exhaustion requirement...." *Id.* Accordingly, the Third Circuit has articulated "[o]ur bright line rule is that inmate-plaintiffs must exhaust all available administrative remedies." *Nyhuis,* 204 F.3d at 75. However, "[c]ompliance with the administrative remedy scheme will be satisfactory if it is substantial."[16] *Id.* at 77–78. *See also Miller v. Tanner,* 196 F.3d 1190, 1194 (11th Cir.1999) (applying the substantial compliance doctrine, determining that although plaintiff did not appeal an initial review of his grievance, plaintiff had exhausted his administrative remedies as he was told "[w]hen any grievance is terminated at the institutional level you do not have the right to appeal. The above listed grievance(s) is closed"). Dismissal of a plaintiff's complaint without prejudice is appropriate when an plaintiff-inmate has failed to exhaust his available administrative remedies before bringing an action under § 1983. *See Booth,* 206 F.3d at 300.

The Pennsylvania Department of Corrections has established the Consolidated Inmate Grievance Review System, DC–ADM 804. Section VI, entitled "Procedures," sets forth a three-step grievance procedure for use following attempted informal resolution of the problem. *See* DC–ADM 804 Section VI.[17] To exhaust all available administrative remedies, a prisoner must complete the three stages of

review provided by DC–ADM 804. *See e.g., Booth,* 206 F.3d at 299 (stating that plaintiff "did not take full advantage of the administrative procedures available to him ..." when plaintiff did not use steps two and three of DC–ADM 804; appeals to intermediate and final review); *Jenkins v. Morton,* 148 F.3d 257, 259 (3d Cir.1998) (discussing California and New Jersey Department of Corrections grievance procedures similar to DC–ADM 804 and stating that "[o]nly after plaintiff has gone through each of these steps may he be said to have exhausted his available administrative remedies") (internal citations omitted); *Bey v. Pennsylvania Department of Corrections,* 98 F.Supp.2d 650, 660–61 (E.D.Pa.2000); *Jones v. Vaughn,* No. 00–1662, 2000 WL 565214 * 1 (E.D.Pa. May 2, 2000); and *McCoy v. Scott,* No. 97–0472, 1997 WL 414185 *2 (N.D.Cal. July 15, 1997) (stating that to exhaust administrative remedies, plaintiff must pursue his claim through the third level of review under the California Code of Regulations). From the record before me, plaintiff has not exhausted his administrative remedies. I will first discuss that plaintiff did not complete all three steps of DC–ADM 804 prior to filing his complaint in this court. I will then address plaintiff's arguments that even though his appeals were not timely under DC–ADM 804, he substantially complied with DC–ADM 804.

---

**16.** In defendants' Reply to Plaintiff's Supplemental Response, defendants incorrectly assert that "[n]owhere in *Nyhuis* does the Court promote a substantial compliance exception to the PLRA." Defs. Reply to Pl.Supp.Resp. at 5 (unpaginated).

**17.** First, a plaintiff-inmate must file a written grievance for initial review to the Facility/Regional Grievance Coordinator within fifteen days after the events upon which the grievance is based. *See* DC–ADM 804 VI. B.2. Extensions of time may be granted for good cause. *See id.* Within ten working days of receipt of the grievance by the Grievance Officer, "the grievant shall be provided a written response to the grievance...." *See id.* at B.4. Second, an inmate may appeal this initial determination, in writing, to the Facility Manager/Community Corrections Regional Director within five days from the inmate's receipt of the decision. *"The inmate must appeal in this manner prior to seeking Final Review."* (emphasis in original). *Id.* at C.2. The intermediate review personnel have ten working days to notify the inmate of the decision. *See id.* at C.4. Third, an inmate may appeal the disposition of an appeal from initial review to the Central Office Review Committee ("CORC") within seven days of receiving the decision. *See id.* at D.1. "Final review will not be permitted until the inmate has complied with all procedures established for Initial Review and Appeal from Initial Review. Exceptions may be made for good cause." *Id.* at D.2. The CORC must issue a decision within twenty-one days after receipt of an inmate's appeal. *See id.* at D.7.

*Plaintiff filed his complaint in federal court before completing the three-part formal grievance procedure set forth in DC–ADM 804*

■ Although not specifically raised by either party, a review of the record indicates that plaintiff filed this case prior to appealing the initial determination of his grievance to the second and third level of review as required under DC–ADM 804. On April 8, 1998, plaintiff filed a grievance regarding the April 3, 1998 incident. On April 23, 1998, plaintiff received a response to his grievance. On May 18, 1998, plaintiff filed a motion to proceed *in forma pauperis* in this court. On July 29, 1998, plaintiff was granted leave to proceed *in forma pauperis.* On that date, his complaint was filed in which plaintiff alleged that, on April 3, 1998, defendants violated his Eighth Amendment rights. However, plaintiff did not appeal the initial review of his grievance to Supt. Dragovich until September 16, 1998. Two days later, plaintiff appealed Dragovich's response to final review. Therefore, plaintiff brought this action before exhausting his administrative remedies under DC–ADM 804.

This scenario is precisely what § 1997e(a) seeks to prevent. *See e.g., Hattie v. Hallock,* 16 F.Supp.2d 834, 836 (N.D.Oh.1998) (dismissing plaintiff's complaint without prejudice when plaintiff did not exhaust his administrative remedies until two months after the lawsuit was filed and stating this is exactly what the PLRA prohibits). The Third Circuit has interpreted § 1997e(a) as establishing a bright line rule; "we are not prepared to read ... § 1997e(a) as meaning anything other than what it says—i.e., that no action shall be brought in federal court until such administrative remedies as are available have been exhausted." *Nyhuis,* 204 F.3d at 78. When plaintiff filed his action here in federal court, he had satisfied only the first part of DC–ADM 804; submitting a written grievance for initial review. Accordingly, plaintiff did not exhaust his available administrative remedies before bringing this lawsuit as required by § 1997e(a). *See Booth,* 206 F.3d at 292–93, 299. Because plaintiff did not exhaust prior to filing his complaint in federal court, plaintiff's complaint must be dismissed without prejudice unless he has substantially complied with his administrative remedies under DC–ADM 804.

*Substantial compliance*

Plaintiff's substantial compliance argument, however, does not address why he did not complete steps two and three of DC–ADM 804 prior to filing his federal complaint. Instead, plaintiff contends that although he has filed untimely appeals to intermediate and final review, he has "substantially complied" with DC–ADM 804. For the reasons set forth below, plaintiff's substantial compliance argument fails.

First, plaintiff concedes that he appealed the initial determination of his grievance to Superintendent Dragovich on September 16, 1998, five months after receiving the response on April 23, 1998. However, DC–ADM 804 provides that if an inmate is unsatisfied with the initial response to his grievance, he must appeal to intermediate review personnel "within five (5) days from the date of receipt by the inmate of the Initial Review decision." DC–ADM 804 VI.C.2. *See also* Bitner Decl. at ¶ 10. "Final review will not be permitted until the inmate has complied with all procedures established for Initial Review and Appeal from Initial Review." *Id.* at D.2. In general, courts have required strict compliance with formal grievance procedures. *See e.g., Petit v. Bender,* No. 99 Civ. 0969, 2000 WL 303280, *2–3 (S.D.N.Y. March 22, 2000) (stating that by writing a letter to the Commissioner objecting to the Superintendent's decision, rather than appealing that decision to the CORC, plaintiff did not satisfy the third step of the grievance procedure, and therefore, plaintiff did not exhaust his administrative remedies); *Rankins v. Murphy,* No. 98–1669, 1998 WL 767441 *1 (E.D.Pa. Nov.3, 1998) (determining that plaintiff did not exhaust his administrative remedies because plaintiff

filed an appeal to the CORC before appealing to the Superintendent as required by DC–ADM 804).

Moreover, DC–ADM 804 provides that an exception for good cause exists regarding the requirement that an inmate comply with initial review and appeal of initial review procedures prior to seeking final review.[18] However, nothing in the record suggests that plaintiff attempted to use this provision. *See Harper v. Jenkin,* 179 F.3d 1311, 1312 (11th Cir.1999) (holding that plaintiff did not exhaust his administrative remedies because he filed an untimely grievance and had not requested leave to file out-of-time for good cause).

In support of his substantial compliance argument, plaintiff first refers to the April 14, 1998 letter in which Dragovich informed plaintiff that he was limited to

filing one grievance per month.[19] Plaintiff claims that plaintiff "may have failed to file his appeal within the policy's time limits" because the language of the letter does not clearly outline the procedures plaintiff could use to appeal. Furthermore, plaintiff asserts that the letter "may have made it unclear to [plaintiff] whether he was entitled to appeal at all."

Although plaintiff contends that he "may have" failed to file a timely appeal because of confusion regarding the reach of the grievance restriction, nothing on the record supports this contention. First, review of the April 14, 1998 letter indicates that the grievance restriction did not restrict plaintiff's right to appeal, "[y]ou are to give staff their entitled 5 days to respond to [inmate] requests and 10 working

**18.** In their reply, defendants assert that under DC–ADM 804 extensions of time in which an inmate can file an appeal may also be granted for good cause. Defs. Reply at 4 (unpaginated). Although DC–ADM 804 clearly provides for an extension of time in which an inmate can file a grievance, it does not clearly articulate whether such extensions are available for the filing of an appeal to intermediate review.

**19.** Plaintiff raises three additional arguments in support of his contention that he substantially complied. First, plaintiff asserts that in Dragovich's response to plaintiff's appeal of the denial of his grievance, Dragovich refers to the investigation of plaintiff's claims. Plaintiff argues that this response indicates that Dragovich himself treated plaintiff's appeal as if it was in substantial compliance with DC–ADM 804 procedures. Although Dragovich mentions "for the record" that an investigation concluded that plaintiff's claims lacked merit, he clearly states that he is returning the appeal because it was untimely. In fact, in his response to defendants' supplemental motion for summary judgment, plaintiff notes that Dragovich "stated simply that [plaintiff's] appeal ... was untimely." Pl. Resp. at 5.

Second, plaintiff contends that plaintiff has exhausted his administrative remedies because the grievance coordinator did not comply with DC–ADM 804. Under DC–ADM 804, a grievance coordinator must respond to an inmate grievance within ten "working days" of receipt of the grievance. DC–ADM 804 VI.C.4. In this case, plaintiff did not receive a

response to his initial grievance until April 23, 1998, fifteen days after his grievance filed April 8, 1998. Therefore, this response was timely only if "working days" does not refer to weekend days. Plaintiff argues that working days should include weekend days and if so, the grievance coordinator did not respond in a timely manner and plaintiff's grievance should be deemed exhausted. I do not find this argument persuasive.

Third, plaintiff refers to the exhaustion requirement under the habeas statute, 28 U.S.C. § 2254(b) and (c) which requires that a petitioner exhaust state appeals prior to filing a claim in federal court. Plaintiff argues that, in habeas cases, courts have determined although a petitioner's state appeals were untimely, the petitioner has substantially complied with the exhaustion requirement. Caselaw applying the substantial compliance doctrine in the PLRA context has yet to develop. I am reluctant to apply the doctrine as applied in habeas cases to cases such as this one. *See e.g., Perez v. Wisconsin Department of Corrections,* 182 F.3d 532, 536 (7th Cir. 1999) (determining that Section 1997e(a) "has a very different structure, as a ban on the bringing of a suit (a structure the exhaustion requirement in the law of collateral attacks never had")); *Naddi v. Hill,* 106 F.3d 275, 277 (9th Cir.1997) (noting that habeas corpus is "dramatically different from any other type of civil action") (internal citations omitted); and *Martin v. United States,* 96 F.3d 853, 855 (7th Cir.1996) (noting that "postconviction relief and prisoner civil rights relief are analytically very different").

days [to respond] to grievances before processing the next level." Under DC–ADM 804, a grievance officer must respond to an inmate grievance within ten days; then if plaintiff is unsatisfied by the response, he may appeal within five days. DC–ADM 804 VI. B.2, C.2. Second, plaintiff has not testified that his failure to file timely appeals was caused by a lack of clarity regarding the scope of the grievance restriction. Third, plaintiff testified that he is familiar with the DC–ADM 804 procedures and frequently uses the grievance system. Pl. Dep. at 95. Therefore, the record suggests that plaintiff was aware that DC–ADM 804 required him to file an appeal of the initial response within five days of receipt of the decision and plaintiff's untimely appeals were not a result of his placement on grievance restriction.

Furthermore, a strong inference exists that plaintiff filed his appeals only to keep his federal claim alive. The record suggests that only after receiving defendants' motion to dismiss did plaintiff file an appeal to the Superintendent for intermediate review, and file an appeal to CORC for final review. In defendants' motion dated September 14, 1998, defendants asserted that in order to exhaust administrative remedies, a inmate is required to complete all three steps of the grievance procedure set forth in DC–ADM 804. Two days later, on September 16, 1998, plaintiff appealed the initial determination of his grievance to Dragovich. On September 18, 1998, plaintiff filed an appeal with the CORC. This is contrary to the policy considerations underlying the PLRA's exhaustion requirement and the spirit of Nyhuis.[20]

In this case, plaintiff filed this suit prior to filing an appeal of the initial grievance response to the Superintendent and to the CORC for final review. Moreover, plaintiff failed to comply with the procedures set forth by DC–ADM 804 for filing appeals to intermediate review and to final review. Therefore, plaintiff has failed to exhaust his available administrative remedies as required by the PLRA. *Nyhuis* has made clear that bright line rule is that inmate must exhaust his administrative remedies prior to filing an action in federal court. "The bright line rule that we adopt makes things clear for inmates ... Our bright line rule is that inmate-plaintiffs must exhaust all available administrative remedies." *Nyhuis*, 204 F.3d at 75. Based on the record before me, I find that plaintiff has not exhausted his available administrative remedies. Accordingly, I will dismiss plaintiff's complaint without prejudice for failure to exhaust his available administrative remedies pursuant to 42 U.S.C. § 1997e(a). Therefore, I will not evaluate the merits of plaintiff's Eighth Amendment claims against defendants Sromovski and Eichenberg.

**AND NOW**, this ___ day of June, 2000, **IT IS ORDERED** that:

1. Defendants' supplemental motion for summary judgment (Docket Entry No. 35) is **GRANTED;**

2. Because defendants' supplemental motion is granted, defendants' motion for summary judgment (Docket Entry No. 30) is **RESOLVED AS MOOT**; and

3. Plaintiff's complaint is **DISMISSED** without prejudice.

---

**20.** Plaintiff contends that the policy considerations underlying the exhaustion requirement support plaintiff's assertion that he has exhausted. Specifically, "1) avoiding premature interruption of the administrative process and giving the agency a chance to discover and correct its own errors; 2) conserving scarce judicial resources ...; and 3) improving the efficacy of the administrative process." Pl.Resp. at 7 (quoting *Nyhuis*, 204 F.3d at 75). In support of this assertion, plaintiff argues that he has presented his grievance to three stages of review and the claim has been investigated by prison officials. However, as the facts in this matter demonstrate, plaintiff filed his complaint prior to completing steps two and three of DC–ADM 804 and appealed to intermediate and final review only after defendants raised the exhaustion issue.