**Timothy BOOTH, Plaintiff**

v.

**PENCE, et al., Defendants**

No. 01–CV–4296.

United States District Court,
E.D. Pennsylvania.

Jan. 24, 2005.

Timothy Booth, Philadelphia, PA, pro se.

Patrick J. Mc Monagle, Office of Attorney General, Philadelphia, PA, for Defendants.

## MEMORANDUM AND ORDER

ANITA B. BRODY, District Judge.

Pro se prisoner plaintiff Timothy Booth ("Booth") brings this action under 42 U.S.C. § 1983 against defendants Correctional Officer ("C/O") Pence, Lieutenant ("Lt.") Pickens,[1] C/O Foreman, Hearing Examiner Canino, and Superintendent Vaughn, all of whom are employees of the Pennsylvania State Department of Corrections ("DOC"). Following my order of February 12, 2003, granting in part and denying in part defendants' motion to dismiss, the only claims that remain in this case are Booth's claims against C/O Pence, Lt. Pickens and C/O Foreman (collectively the "DOC defendants" or "defendants") for violating Booth's rights under the First and Eighth Amendments of the United States Constitution. This court has sub-

---

1. Lt. Pickens is named as Lt. "Pekins" in the complaint, but all parties agree that the correct spelling of this defendant's name is "Pickens." (Booth Dep. at 12.)

ject matter jurisdiction over this case based on the existence of a federal question. Presently before me is defendants' motion for summary judgment on all remaining claims. For the reasons set forth below, defendants' motion is granted.

## I. BACKGROUND

On April 11, 2001, C/O Pence issued a misconduct charge against Booth for disobeying a direct order. (Booth Dep. at 8–9.) That same day, Booth filed an official grievance against Pence (1) for harassment and (2) for filing a false misconduct report against him. (Defs.' Mot. for Summ. J. Ex. 1; Booth Dep. at 8.) Booth did not seek a final review of his grievance against Pence from the Secretary's Office of Inmate Grievances and Appeals. (Decl. of Chief Grievance Officer Tshanna Kyler ¶ 5.) In this action before me, Booth alleges that he had previously made informal complaints to other C/Os about Pence's treatment of him and that Pence issued the misconduct charge in retaliation for Booth's complaints. (Defs.' Mot. for Summ. J. Ex. 1; Booth Dep. at 11.)

Again on July 10, 2001, Booth filed a grievance against Lt. Pickens for allegedly harassing Booth in the cafeteria about returning to the "regular line" for a cup of coffee after Booth had already gone through the "diet line." [2] (Defs.' Mot. for Summ. J. Ex. 2.) In this action before me, Booth alleges that on an uncertain date following the July 10, 2001 grievance, Lt. Pickens prevented Booth from going into the regular line to get some sugar after Booth had already gone through the diet line. (Booth Dep. at 13, 16.) Booth alleges that he had recently received an insulin

shot and he told defendant Pickens that he needed "sugar or something to bring the sugar up." (*Id.*) Pickens refused to allow Booth to get any sugar and "stood there and watched me [Booth] go into a sugar shock and denied me [Booth] medical treatment." (*Id.* at 13–14.) Booth felt better when an individual sitting nearby gave Booth some juice to drink. (*Id.* at 14, 17.) On July 19, July 25, and August 9 of 2001, Booth filed grievances regarding the lack of administrative action on his July 10, 2001 grievance. (Defs.' Mot. for Summ. J. Ex. 2.) Booth did not mention his near brush with insulin shock in any of these follow up grievances. (*Id.*) He only referred to this incident in his deposition and his complaint. (Compl.; Booth Dep. at 13–17.) Booth also did not seek a final review of these grievances from the Secretary's Office of Inmate Grievances and Appeals. (Decl. of Chief Grievance Officer Tshanna Kyler ¶ 5.)

On July 22, 2001, C/O Foreman issued a misconduct charge against Booth for refusing to obey an order by failing to stand for count. (Booth Dep. at 21–22.) The misconduct charge alleged that Booth refused similar orders on July 4, 2001 and July 12, 2001. (*Id.* at 23.) In this action, Booth alleges that the July 22, 2001 charge was a false misconduct charge that C/O Foreman filed in retaliation for Booth's grievances against Lt. Pickens. (*Id.* at 20–21.) Booth did not file a grievance regarding this misconduct charge.

Booth brings the instant action for "retaliatory punishment and deliberate medical indifference." (Tr. 7/24/03 [3] at 8.) Booth claims that defendant Pickens violated his rights under the Eighth Amend-

---

**2.** Booth is a diabetic and states that he is allowed to eat in the "diet line" or in the "regular line" depending on whether his sugar is low or high. (Defs.' Mot. for Summ. J. Ex. 2.) However, the Pennsylvania DOC contends that if Booth eats in the diet line, then

he is to take nothing from the regular line. (*Id.* Ex. 3.)

**3.** A hearing on various motions in this case as well as in *Booth v. King*, No. 03–802 (E.D. Pa. filed Feb. 10, 2003), and *Booth v. Loreno*, No.

ment by withholding sugar packets from Booth, a diabetic. Booth also claims that defendants Pence and Foreman violated his rights under the First and Eighth Amendments by issuing false misconduct charges against Booth in retaliation for Booth's filing grievances or making informal complaints.

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(c), "[s]ummary judgment should be granted if, after drawing all reasonable inferences from the underlying facts in the light most favorable to the non-moving party, the court concludes that there is no genuine issue of material fact to be resolved at trial and the moving party is entitled to judgment as a matter of law." *Kornegay v. Cottingham*, 120 F.3d 392, 395 (3d Cir.1997). The moving party must make an initial showing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-movant must then "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. 2548. To avoid summary judgment, the non-moving party must produce more than a "mere scintilla" of evidence to demonstrate a genuine issue of material fact.

*Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Rule 56(e) does not allow a party resisting the motion [for summary judgment] to rely merely upon bare assertions, conclusory allegations or suspicions." *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir.1982). Merely showing "that there is some metaphysical doubt as to the material fact" is insufficient. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## III. DISCUSSION

### A. Exhaustion of Administrative Remedies

 DOC defendants argue that summary judgment should be granted on all claims because Booth failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a):

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).[4] Under section 1997e(a) "exhaustion of all administrative

---

02–6752 (E.D. Pa. filed Aug. 14, 2002), was held on July 24, 2003. Plaintiff filed at least seven cases in the past four years in the Eastern District of Pennsylvania. In addition to the instant case, *Booth v. King*, and *Booth v. Loreno*, plaintiff has brought the following cases: *Booth v. Vaughn*, No. 02–1072 (E.D. Pa. filed Feb. 28, 2002); *Booth v. PA Parole Board*, No. 03–5646 (E.D. Pa. filed Oct. 10, 2003); *Booth v. Pence*, No. 01–3481 (E.D. Pa. filed Jul. 12, 2001); and *Booth v. Lowell*, No. 03–6514 (E.D. Pa. filed Dec. 2, 2003). Plaintiff also brought at least one case in the Middle District of Pennsylvania that eventually made its way to the United States Supreme

Court who affirmed its dismissal for lack of exhaustion. *Booth v. Churner*, 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001).

4. Administrative exhaustion in prison condition cases is an affirmative defense that must be pleaded and proven by the defendants. *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002). DOC defendants failed to raise the affirmative defense of lack of administrative exhaustion in their motion to dismiss or in their answer to Booth's complaint. The instant motion for summary judgment was the first time DOC defendants raised this defense. Typically, "[f]ailure to raise an affirmative defense by responsive pleading or by appro-

remedies [is] mandatory." *Nyhuis v. Reno*, 204 F.3d 65, 67 (3d Cir.2000). The Pennsylvania DOC Consolidated Inmate Review System provides for three levels of administrative review of inmate grievances: the initial grievance submitted to the Facility Grievance Coordinator, an intermediate level of appeal to the Facility Manager, and a final level of appeal to the Secretary's Office of Inmate Grievances and Appeals. Commonwealth of Pennsylvania, Department of Corrections, Consolidated Inmate Grievance Review System, Policy No. DC–ADM 804 § VI. *See also Booth v. Churner*, 206 F.3d 289, 293 n. 2 (3d Cir.2000) (outlining the grievance review process). In the Third Circuit, the exhaustion requirement of § 1997e(a) is not satisfied simply "whenever there is no further process available to the inmate within the grievance system (which would happen if, say, an inmate fails to file an administrative appeal). . . ." *Spruill v. Gillis*, 372 F.3d 218, 227–28 (3d Cir.2004). Rather, § 1997e(a) requires that an inmate "avail[ ] himself of every process at every turn (which would require all appeals to be timely pursued, etc.)." *Id.*

█ In this case, Booth has failed to administratively exhaust any of his claims. Although Booth filed a grievance against defendant Pence regarding his allegedly false misconduct charge, DOC defendants provide unrebutted evidence that Booth did not appeal his grievance against Pence to the Secretary's Office of Inmate Grievances and Appeals. (Decl. of Chief Griev-

ance Officer Tshanna Kyler ¶ 5.) Booth also failed to pursue any of his grievances against defendant Pickens to the final level of administrative review (*id.*), and Booth never actually filed a grievance regarding the incident at the heart of his deliberate medical indifference claim against defendant Pickens—the incident where Pickens "stood there and watched me [Booth] go into a sugar shock and denied me [Booth] medical treatment." (Defs.' Mot. for Summ. J. Ex. 2; Booth Dep. at 13–14.) As for Booth's retaliation claim against defendant Foreman, the record is devoid of any evidence that Booth ever filed a grievance against Foreman regarding this misconduct charge.

Because Booth failed to exhaust his administrative remedies with respect to any of his claims, DOC defendants' motion for summary judgment is granted. However, even if Booth had exhausted his administrative remedies, Booth's claims must fail on the merits.

**B. *Eighth Amendment claims***

█ In *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), the Supreme Court applied a two-prong test for determining whether a prison official violated the Eighth Amendment. The first prong is an objective determination of whether the deprivation is "sufficiently serious" such that the prison official's act or omission resulted "in the denial of the minimal civilized measure of life's necessities." 511 U.S. at 834, 114

priate motion generally results in the waiver of that defense." *Charpentier v. Godsil*, 937 F.2d 859, 863 (3d Cir.1991). The Third Circuit has not yet decided whether a defendant's failure to raise the exhaustion defense under section 1994e(a) in its first responsive pleading constitutes a waiver. *McCargo v. Guelich*, 47 Fed.Appx. 96 (3d Cir. Sept.17, 2002). However, "failure to raise an affirmative defense by responsive pleading or appropriate motion, however, does not always result in waiver." *Charpentier*, 937 F.2d at 863.

"[A] responsive pleading may be amended at any time by leave of court to include an affirmative defense, and leave shall be freely given when justice so requires. Unless the opposing party will be prejudiced, leave to amend should generally be allowed." *Id.* at 863–64. Booth does not present, and I cannot find, any indication that he was prejudiced by DOC defendants' delay in raising their exhaustion defense. Therefore, I will consider DOC defendants' argument that Booth failed to administratively exhaust.

S.Ct. 1970. The second prong is a subjective test of whether the prison official has a "sufficiently culpable state of mind," that of "deliberate indifference to inmate health or safety." *Id.*

■ Booth claims that defendants Pence and Foreman violated his Eighth Amendment rights when they issued false misconduct charges against him. Under the objective prong of the test for an Eighth Amendment claim, false misconduct charges are not "sufficiently serious" that they result "in the denial of the minimal civilized measure of life's necessities." *Farmer, supra.* False misconduct charges themselves do not constitute the denial of "basic human needs, such as food, clothing, shelter, sanitation, medical care and personal safety." *Griffin v. Vaughn,* 112 F.3d 703, 709 (3d Cir.1997). Nor does Booth allege any of the above deprivations in connection with the misconduct charges. Therefore, Booth's allegations of false misconduct charges fail to state an Eighth Amendment violation.

■ Booth also claims that defendant Pickens violated his Eighth Amendment rights when Pickens prevented Booth from getting sugar packets in the prison cafeteria and that this constituted deliberate medical indifference. In *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the Supreme Court held that the Eighth Amendment proscribes deliberate indifference to prisoners' serious medical needs. *Id.* at 103–04, 97 S.Ct. 285. In order to establish this claim, Booth must show "(i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden County Correctional Facility,* 318 F.3d 575 (3d Cir.2003). Once again, the second prong is a subjective test of whether the prison official has a "sufficiently culpable state of mind," that of "deliberate indifference to inmate health or safety." *Farmer,* 511 U.S. at 834, 114 S.Ct. 1970. An official is deliberately indifferent only if the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837, 114 S.Ct. 1970.

In *Monmouth County Correctional Institutional Inmates v. Lanzaro,* 834 F.2d 326 (3d Cir.1987) (*"MCII"*), the Third Circuit set forth many examples of scenarios that would satisfy the deliberate indifference prong of an Eighth Amendment claim for denial of medical treatment. The examples most relevant to this case are:

> Where prison authorities deny reasonable requests for medical treatment ... and such denial exposes the inmate to undue suffering or the threat of tangible residual injury, deliberate indifference is manifest. Similarly, where knowledge of the need for medical care is accompanied by the intentional refusal to provide that care, the deliberate indifference standard has been met.

*MCII,* 834 F.2d at 346 (internal quotations and citations omitted).

Booth fails to put forth more than a "mere scintilla" of evidence as to the second prong of an Eighth Amendment claim: that defendant Pickens acted with deliberate indifference. Upon being denied access to the regular food line, Booth told defendant Pickens that he needed "sugar or something to bring the sugar up." (Booth Dep. at 13.) Additionally, Booth stated, "Anybody diabetic, they know when they go into sugar shock because they start shaking." (*Id.* at 13.) However, Booth never indicates that he actually requested medical treatment or that he was actually shaking that day. Indeed, Booth is not even clear on whether he was or was not in insulin shock. When Booth was flat out asked whether "you did go into sugar shock or you were about to," Booth re-

sponded, "You could say I was in the insulin shock. You still can—all depends on how far you go in it." (*Id.* at 17.) Booth immediately felt better after someone gave him some juice. (*Id.*) These facts, as Booth describes them, simply do not amount to the *MCCII* examples of "deny[ing] reasonable requests for medical treatment ... expos[ing] the inmate to undue suffering" or "knowledge of the need for medical care" coupled with an "intentional refusal to provide that care." 834 F.2d at 346 (*quoted in Spruill v. Gillis,* 372 F.3d 218, 237 (3d Cir.2004)). Booth did not make a reasonable request for medical treatment, he was not exposed to undue suffering, there is minimal evidence that Pickens had knowledge that Booth needed medical treatment, and there is no evidence that Pickens intentionally refused to provide medical care. Because Booth fails to provide more than a mere scintilla of evidence that defendant Pickens acted with deliberate indifference to a medical need, Booth's Eighth Amendment claim against Pickens cannot survive summary judgment.

For the reasons set forth above, Booth fails to state an Eighth Amendment claim against any of the DOC defendants.

## C. Claims of Retaliation

■ In order to prevail on a retaliation claim, a prisoner-plaintiff must first prove that "the conduct which led to the alleged retaliation was constitutionally protected." *Rauser v. Horn,* 241 F.3d 330, 333 (3d Cir.2001). Next, the plaintiff must show that he suffered some "adverse action" at the hands of prison officials. *Id.* A prisoner-plaintiff satisfies this requirement

by demonstrating that the action "was sufficient to deter a person of ordinary firmness from exercising his rights." *Allah v. Seiverling,* 229 F.3d 220, 225 (3d Cir.2000).

■ Once a prisoner-plaintiff has met these first two threshold tests, he or she must prove "a causal link between the exercise of his constitutional rights and the adverse action taken against him." *Rauser,* 241 F.3d at 333. If a prisoner-plaintiff has shown that his exercise of a constitutional right was a "substantial and motivating factor" in the challenged decision, the burden then shifts to defendant prison officials who may still prevail by proving by a preponderance of the evidence that they would have made the same decision absent the protected conduct for reasons reasonably related to penological interest. *Id.* at 334. At the summary judgment stage, the plaintiff need only meet his burden of producing evidence from which a reasonable jury could conclude that the adverse action was taken in retaliation for the exercise of his protected rights. If the plaintiff produces evidence from which a reasonable jury could conclude that the exercise of his right was a "substantial and motivating factor" in defendants' actions, the ultimate question of causation must be decided by the fact-finder. However, in order to meet this standard at the summary judgment stage, plaintiff must provide more than a mere scintilla of evidence. *Big Apple BMW, Inc.,* 974 F.2d at 1363; *Liberty Lobby, Inc.,* 477 U.S. at 252, 106 S.Ct. 2505.

Booth claims that defendant Pence issued a false misconduct charge against Booth in retaliation for Booth's informal complaints.[5] As for the first requirement

---

5. DOC defendants also address Booth's retaliation claim against Pence as if Booth is claiming that Pence issued the misconduct charge in retaliation for Booth filing the grievance against Pence. (Defs.' Mot. for Summ. J. at 14.) Defendants properly point out that such

a claim would fail. Because Booth's grievance against Pence references the allegedly false misconduct charge (*Id.* Ex. 1), the misconduct charge logically must have preceded the grievance and could not have been issued in retaliation for an event that succeeded it.

of a successful retaliation claim, DOC defendants argue that informal complaints are not constitutionally "protected activity." (Defs.' Mot. for Summ. J. at 14.) As for the second requirement, defendants do not seem to dispute that a misconduct charge is adverse action that is sufficient to deter a person of ordinary firmness from exercising his rights. And as for the requirement that plaintiff show a causal-link between the protected activity and the adverse action, defendants argue that Booth has not produced any evidence that his informal complaints against Pence were a "substantial and motivating factor" in Pence's issuing a misconduct charge against Booth. (Id.)

Regardless of whether informal complaints constitute "protected activity," [6] Booth's retaliation claim against Pence must fail because Booth fails to provide any evidence that Booth's informal complaints were a substantial and motivating factor in Pence's issuing a misconduct charge. With regards to the informal complaints, Booth simply alleges in his grievance (Defs.' Mot. for Summ. J. Ex. 1)

and in his deposition (Booth Dep. at 11) that Pence's misconduct charge was retaliatory. However, Booth provides no evidence to support this allegation. "Rule 56(e) does not allow a party resisting the motion [for summary judgment] to rely merely upon bare assertions, conclusory allegations or suspicions." *Fireman's Ins. Co.*, 676 F.2d at 969. Booth does not even allege when these informal complaints took place, thereby preventing any inference of suggestive temporal proximity which can be relevant to showing causation. *See Rauser*, 241 F.3d at 334. Nor is there any evidence that Pence was even aware of Booth's informal complaints. Because Booth has failed to provide any evidence as to the "substantial and motivating factor" requirement of a retaliation claim, Booth's retaliation claim against defendant Pence fails to survive summary judgment.

Booth also claims that defendant Foreman issued a false misconduct charge against Booth in retaliation for Booth's grievances against defendant Pickens. Defendants do not seem to dispute that the filing of a grievance is constitutionally

Booth's deposition clarifies that he is alleging that Pence issued a false misconduct charge against Booth in retaliation for Booth's making informal complaints about Pence to other C/Os. (Booth Dep. at 11.) This is the claim addressed in this opinion.

6. The parties have not presented, and this court has not found, any Third Circuit decision on whether informal complaints from an inmate to a correctional officer constitute protected activity under the First Amendment right to petition the government for a redress of grievances. However, at least one court in the Southern District of New York has indicated in dicta that "the administrative remedies for which an inmate enjoys a First Amendment right of petition are limited to those set forth under state administrative law, such as sending a complaint to a state bureau of prisons, as opposed to informal or intra-prison complaints." *Bowman v. City of Middletown*, 91 F.Supp.2d 644, 664–65. Addi-

tionally some District of New Jersey courts have held that, in the context of employment law, the right to petition is limited to formal grievances and lawsuits. *See, e.g., Bradshaw v. Township of Middletown*, 296 F.Supp.2d 526, 546 (D.N.J.2003).

Booth fails to even allege, much less provide evidence of, the precise nature of his informal complaints to other C/Os regarding C/O Pence. However, there is no indication that his complaints were made to personnel who had any power to redress his concerns or that his complaints rose to the level of an actual "petition." There is also no indication that these informal complaints consisted of threats to file a formal grievance or lawsuit. Without more detail as to the nature of the complaint, I would be reluctant to hold that any informal complaint from an inmate to a C/O, which might be nothing more than gossip regarding what one inmate thinks of a C/O, is protected activity under the First Amendment right to petition.

protected activity or that a misconduct charge is adverse action that is sufficient to deter a person of ordinary firmness from exercising his rights. Defendants only argue that Booth has not produced any evidence that his grievance against Pickens was a "substantial and motivating factor" in Foreman's issuing a misconduct charge against Booth. (Defs.' Mot. for Summ. J. at 14.)

In support of his retaliation claim, Booth alleges that Foreman filed a false misconduct report against him at the request of Lt. Pickens. (Booth Dep. at 24.) There are only two aspects of the record that could even begin to supports any inference that Booth's grievance against Pickens was a "substantial and motivating factor" in Foreman's issuing a misconduct charge against Booth: (1) that defendants Pickens and Foreman speak with each other [7] (Booth Dep. at 24), and (2) the suggestive temporal proximity between Booth's grievance against Pickens, dated July 10, 2001, and Foreman's misconduct charge against Booth, dated July 22, 2001. *See Rauser*, 241 F.3d at 334. However, Booth himself admits that he has never heard defendant Pickens and defendant Foreman discuss Booth in particular. (Booth Dep. at 24.) Indeed, there is no evidence that Foreman was even aware of Booth's grievance against Pickens. With the evidence provided above, which does not rise above the "mere scintilla" standard for surviving summary judgment, a reasonable jury

could not conclude that Booth's grievance against Pickens was a substantial and motivating factor in Foreman's issuing a misconduct charge against Booth. Therefore, Booth's retaliation claim against defendant Foreman fails to survive summary judgment.

## IV. CONCLUSION

For the reasons set forth above, DOC defendants motion for summary judgment is granted as to all of Booth's claims.[8]

### *ORDER*

AND NOW, this __ 24th__ day of January 2005, it is **ORDERED** that defendants' motions for summary judgment (Docket # 73) is **GRANTED** and this case is **DISMISSED WITH PREJUDICE.** Judgment is entered in favor of defendants and against plaintiff.

---

**7.** Booth's deposition is unclear as to whether he has seen Pickens and Foreman speaking or Pence and Foreman speaking: "Q. Did you see Lieutenant Pickens speak with Corrections Officer Foreman? A. Many of times. They be on the block together when—when C/O Foreman is coming on, Pence is still there. They stop in the office and they talk, do this, do that, do this." (Booth Dep. at 24.) For purposes of the summary judgment motion, I will assume that Booth saw Pickens and Foreman speaking.

**8.** DOC defendants also argue that they are entitled to qualified immunity. Because Booth fails to show that defendants' conduct violated a constitutional right, defendants are indeed entitled to qualified immunity under the first prong of the two-part inquiry set out by *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).